William SATTERWHITE, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–95–523–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 28, 1997.

Stephen Christopher Taylor, Galveston, for Appellant.

Robert E. Bell, Crim. Dist. Atty., Edna, Jim Vollers, Austin, for State.

## OPINION

SEERDEN, Chief Justice.

William Satterwhite, appellant, was indicted for falsely holding himself out as a lawyer.[2] A jury found appellant guilty and assessed punishment at confinement for a term of four and one-half years, plus a $7,500 fine. On appeal, appellant challenges the jurisdiction of the trial court and the sufficiency of the evidence in support of his conviction. We affirm appellant's conviction.

### FACTUAL BACKGROUND

The facts in this case are uncontested. On May 1, 1993, appellant was notified that his

**2.** *See* TEX. PENAL CODE ANN. § 38.122 (Vernon 1994).

annual State Bar dues were due and payable by June 1, 1993. Prior to May 1, 1993, however, appellant was suspended for failure to meet the MCLE requirements.[3] On July 1, 1993, the 30–day "grace period" afforded attorneys to pay their bar dues had expired. Appellant was not sent a reminder notice because, as stated above, appellant was already on suspension for noncompliance with the MCLE requirements.

On September 1, 1993, a letter was mailed from the State Bar to appellant notifying appellant that his license to practice law was suspended for nonpayment of State Bar dues. In October 1993, appellant sent two checks to the State Bar. These checks were not written in the correct amount and were returned by the State Bar. Appellant sent another check in November 1993, which was also written for an improper amount and returned. On November 8, 1993, a check was received from appellant in the correct amount, but this check was not paid due to insufficient funds. It was not until January 4, 1994, that appellant finally paid his bar dues in the proper amount.

However, on December 13, 1993, at a time when appellant's license to practice law in Texas was suspended, appellant represented John Lemke as his attorney of record in seven felony criminal cases. For this conduct, appellant was indicted under section 38.122 of the Texas Penal Code for falsely holding himself out as a lawyer. A jury found appellant guilty and assessed punishment at confinement for a term of four and one-half years, plus a fine of $7,500.00. Appellant brings four points of error complaining of the jurisdiction of the trial court and the sufficiency of the evidence to support his conviction.

### JURISDICTION

Appellant, in his fourth point of error, challenges the jurisdiction of the trial court.

**3.** There is no discussion regarding these MCLE requirements. Both parties agree, however, that appellant met those requirements as of August 3, 1993.

He was originally indicted under Cause No. 94–5–5104. This original indictment was filed on May 27, 1994, and indicates that it was presented to the Grand Jurors of Jackson County, Texas, at the January–July 1994 Term. The foreman of that term, J. Rodriguez, signed the indictment. Appellant was subsequently re-indicted under Cause No. 95–10–5464. This subsequent indictment was filed on October 17, 1995 and bore the signature of Pat H. Griffin, foreman. However, this latter indictment indicates that it too was presented to the grand jurors during the January–July 1994 Term. Appellant argues that because this latter indictment was filed fourteen months after the end of the January–July 1994 Term and was not signed by the foreman of the January–July 1994 Term, it did not meet the requirements set out in the Texas Code of Criminal Procedure. As a result, appellant argues, the trial court lacked the jurisdiction to proceed with trial on the merits in Cause No. 95–10–5464.

After a jury had been selected but before the indictment was presented to the jury, appellant objected to the trial courts' proceeding with trial on the merits in Cause No. 95–10–5464, challenging the indictment as being fundamentally defective. In response, the State pointed out to the court that appellant was, in effect, contesting an incorrect grand jury allegation which would be a matter of form properly raised in a timely motion to quash. The trial court agreed and denied appellant's request, indicating that it was not entertaining any motions to quash at that time.

▮ Although the indictment returned by the Grand Jury in Cause No. 95–10–5464 recites that it was returned during the January–July 1994 Term, it appears from a review of the record that this indictment was actually returned during the January–July 1995 Term. This error, the State argues, is a defect of form properly raised in a motion to quash presented to the court before trial on the merits commences. We agree.

In response to an allegation that an indictment was defective because the indictment, on its face, reflected a term of court for the grand jurors which was an impossible term, the Court of Criminal Appeals has stated,

He contends that the indictment should have been amended. We do not agree that such was necessary. In *Osborne v. State,* 24 Tex.App. 398, 6 S.W. 536, the Court of Appeals said:

> "It was surplusage to allege the time when the term of the court began; and this portion of the indictment might have been stricken out without invalidating the indictment."

Later this Court in *Fagnani v. State,* 66 Tex.Cr.R. 291, 146 S.W. 542, said:

> "Appellant's motion to quash the indictment, because it incorrectly gave the term at which the grand jury was impaneled 'at the May term, A.D. 191___,' instead of 'at the May term, A.D.1911,' was properly overruled."

*Guerra v. State,* 478 S.W.2d 483, 484 (Tex. Crim.App.1972). Later, the court reaffirmed its holding in *Guerra* by stating that an "allegation in the indictment as to the terms of court or the grand jury is unnecessary and need not be stated in the indictment." *Phillips v. State,* 615 S.W.2d 756, 757 (Tex.Crim. App.1981).

In light of these pronouncements, we find the term of the court returning the indictment is surplusage or merely a matter of form. Article 1.14 of the Texas Code of Criminal Procedure provides that a defendant waives the right to object to a defect, error, or irregularity of form or substance in an indictment if he does not object before the date on which the trial on the merits commences. Tex.Code Crim. Proc. Ann. art. 1.14 (Vernon 1994). Our review of the record shows that a jury had been selected and impaneled before appellant's challenge to the indictment was made. Accordingly, because trial on the merits had begun, we hold that appellant waived the right to complain about the form of the indictment. *See Hinojosa v. State,* 875 S.W.2d 339, 342 (Tex.App.—Corpus Christi 1994, no pet.) (trial on merits "commences" when jury impaneled and sworn); *Bucciarelli v. State,* 793 S.W.2d 289, 290 (Tex.App.—Corpus Christi 1990, pet. ref'd) (motion to quash that is filed on the day of trial is untimely and will not be considered).

Appellant's fourth point of error is overruled.

### SUFFICIENCY OF THE EVIDENCE

In his first and second points of error, appellant complains that the evidence adduced at trial was legally and factually insufficient to support his conviction for the offense of falsely holding oneself out as a lawyer. Appellant also relies on the retroactive effect of article III, § 7(a) of the State Bar Rules. We will address each argument in turn.

### Legal Sufficiency

In reviewing the legal sufficiency of the evidence the appellate court must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex.Crim.App.1995). Legal sufficiency of the evidence is measured against the indictment as incorporated into the jury charge. *Fisher v. State*, 887 S.W.2d 49, 55 (Tex.Crim. App.1994).

After reviewing the record, we find sufficient evidence to support the jury's conclusion that appellant did intentionally hold himself out as a lawyer while not in good standing. The evidence shows that on December 13, 1993, appellant represented John Lemke who entered pleas of guilty to indictments pending in a district court. The testimony of both Mr. and Mrs. Lemke establish that on the date of the pleas appellant was paid for his services. It is also beyond dispute that on December 13, 1993, appellant had been suspended for failure to pay his bar dues. The testimony from appellant and Lemke establish that appellant knew, on December 13, 1993, that his license to practice law had been suspended. We find this to be sufficient evidence, when viewed in the light most favorable to the jury's verdict, from which a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

### Factual Sufficiency

In reviewing the factual sufficiency of the evidence, the court must review all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In conducting a factual sufficiency review, an appellate court reviews the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination; however, review must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. *Id.* at 133.

Appellant's only contention here, other than his reliance on the retroactive effect of paying past-due State Bar dues (discussed below), is that the evidence adduced at trial failed to prove that appellant's failure to pay State Bar dues was intentional. Appellant did not point us to any evidence in the record which supports this contention. After reviewing the record, we find that the only evidence in support of this contention is appellant's testimony that his secretary made the mistake resulting in the non-payment of appellant's State Bar dues. This testimony, however, is irrelevant to the issue at hand. The offense of falsely holding oneself out as a lawyer, as set out in the Texas Penal Code and as submitted to the jury, makes it a crime to intentionally hold oneself out as lawyer for economic benefit while not in good standing with the State Bar. *See* TEX. PENAL CODE ANN. § 38.122 (Vernon 1994). If appellant knew that he was not in good standing at a time when he intentionally held himself out as an attorney for economic benefit, it is irrelevant whether his failure to pay State Bar dues was intentional.

As stated above, the evidence shows that on December 13, 1993, appellant represented John Lemke who entered pleas of guilty to indictments pending in a district court. It is also beyond dispute that on December 13, 1993, appellant was under suspension for failure to pay his bar dues. Appellant himself testified that he sent checks to the State Bar in both October 1993 and November 1993 in response to a letter from the State Bar noti-

fying appellant of his suspension for nonpayment of State Bar dues. Both checks were written in the incorrect amount and were returned by the State Bar. Appellant further testified that he knew his privilege to practice law had been suspended and he was not authorized to practice law on December 13, 1993 because of his failure to pay State Bar dues. Additionally, Lemke testified that a week after he entered his pleas of guilty with the assistance of appellant, appellant contacted Lemke by phone and advised Lemke that he (appellant) was not licensed to practice law and that Lemke could get the pleas set aside. Lemke further testified that appellant told him (Lemke) that appellant knew he was not a lawyer at the time of the pleas. In light of this evidence, we hold that the verdict was not so against the great weight and preponderance of the evidence so as to be clearly wrong and unjust.

### Retroactivity

■ Appellant premises the remainder of his sufficiency argument on the retroactive effect of the payment of his past-due State Bar dues. Specifically, appellant argues that upon payment of his delinquent bar dues, his membership in the Texas State Bar was "revitalized" retroactively, thereby validating his actions during the period of his suspension. Accordingly, appellant contends that the evidence adduced at trial was insufficient to support his conviction.

In support of this contention, appellant relies upon the language of Art. III, § 7(a) which states:

> When a member, who has been suspended for nonpayment of fees or assessments, removes such default by payment of fees or assessments then owing, plus an additional amount equivalent to one-half the delinquency, the suspension shall automatically be lifted and the member restored to former status. Return to status shall be retroactive to inception of suspension, but shall not affect any proceeding for discipline of the member for professional misconduct.

STATE BAR RULES Art. III, § 7(a). For the reasons stated below, we hold that the retroactive effect of this provision does not oper-

ate to "erase" appellant's conviction for holding oneself out as a lawyer.

Appellant's reliance on *Hill v. State*, 393 S.W.2d 901 (Tex.Crim.App.1965) and related caselaw is misplaced. The Court of Criminal Appeals in *Hill* was dealing solely with the issue of whether a defendant who was represented by an attorney during the period of time that the attorney's license was suspended for failure to pay bar dues was entitled to a new trial because of ineffective assistance of counsel. The *Hill* court pointed out that when the delinquent attorney-member pays his delinquent dues he then is restored to the status that he occupied prior to becoming delinquent. This is because, as the court points out, even though the failure to pay bar dues causes the attorney's name to be removed from the membership roll of the State Bar, that attorney is still licensed to practice law. In other words, he is still qualified to practice law. As the *Hill* court points out, "[s]uch an attorney does not have to again show his fitness or qualification to practice law. He does not have to be re-admitted to the practice. His competency as an attorney has not been diminished." *Hill*, 393 S.W.2d at 904.

In fact, the attorney in *Hill* had been licensed and continuously engaged in the practice of law for the ten years prior to the date in question. In that time, he had tried twenty to twenty-five criminal cases a year, many similar to the case at issue. Accordingly, it is not surprising that the court held that his client, Mr. Hill, received effective counsel.

A similar holding was announced in a more recent case out of the Court of Criminal Appeals. *See Cantu v. State*, 930 S.W.2d 594 (Tex.Crim.App.1996). In *Cantu*, the court was faced with the issue of whether a lawyer's suspension for failing to respond to demands from the State Bar Grievance Committee deprived Cantu, the criminal defendant, of his Sixth Amendment right to effective assistance of counsel. The Cantu Court, in announcing a case-by-case approach in determining whether representation by a suspended or disbarred attorney constitutes a Sixth Amendment violation, *id.* at 602, cited the *Hill* case for the proposition that state

law may sometimes permit technical violations to be cured retroactively after the defect is removed. *Id.* at 598. The court mentioned *Hill* in the context of rejecting continued licensed status as a jurisdictional prerequisite to the requirement of counsel. *Id.* Again the Court of Criminal Appeals was recognizing that once an attorney has fulfilled the "threshold" requirements for legal practice, that attorney may still be capable of rendering effective assistance of counsel although he may later become ineligible to do so because of suspension or disbarment. *Id.*

The *Hill* and *Cantu* cases are distinguishable from this case. They dealt solely with whether a criminal defendant received effective assistance of counsel when represented by an attorney not in good standing with the Texas State Bar. The question in the case before us is whether a retroactive return to pre-suspension status via the payment of past-due State Bar dues excuses an attorney from acts of professional misconduct intentionally and knowingly engaged in by the attorney during that attorney's period of suspension. We hold that it does not.

An attorney who is retroactively returned to his pre-suspension status as an active member of the State Bar should not be absolved of liability for any misconduct occurring during the period of his suspension. Neither the caselaw, the Penal Code, nor the State Bar Rules support such a proposition. The legislature stated in Section 38.122 of the Penal Code that an attorney commits a felony offense if he holds himself out as an attorney, with intent to obtain an economic benefit, when he is not in good standing in the state where he is licensed to practice law. TEX. PENAL CODE ANN. § 38.122 (Vernon 1994). A rule of the State Bar cannot "erase" the criminality of an act which was declared to be a felony by the Texas legislature. This is even more evident when it is considered that the rule itself specifically provides that, even though a return to status shall be retroactive, it "shall not affect any proceeding for discipline of the member for professional misconduct." STATE BAR RULES Art. III, § 7(a).

In light of the above findings and discussions, we hold that the evidence is both legally and factually sufficient to support appellant's conviction. The retroactive effect of the payment of past-due State Bar dues has no effect on appellant's conviction for falsely holding himself out as an attorney while not in good standing with the State Bar. Accordingly, we overrule appellant's first and second points of error.

## REMINDER NOTICE

██ In his third point of error, appellant complains that the evidence is legally insufficient to support appellant's conviction because the evidence shows that the State Bar did not comply with the STATE BAR RULES, Article III, § 5, in that the State Bar failed to notify appellant that he was in default of payment of membership fees.

Appellant's contention is based upon Article III, Section 5, of the State Bar Rules, which provides:

> If the fees and assessments are not paid on or before sixty (60) days after the mailing of the notice of default, the defaulting member shall automatically be suspended from the practice of law. . . .

STATE BAR RULES Art. III, § 5. The State concedes that a reminder notice was never sent to appellant because appellant was already on suspension for noncompliance with the MCLE requirements. The State argues, however, that appellant's contention is contrary to the position taken by appellant at trial.

The record shows that appellant knew that his bar dues had not been paid. In fact, appellant sent checks to the State Bar on at least three occasions in response to a letter from the State Bar notifying appellant that his license to practice law was suspended for nonpayment of bar dues. More importantly, appellant repeatedly testified that he was aware that he had been suspended from the practice of law for nonpayment of State Bar dues at the time he represented Lemke on December 13, 1993.

We hold that, under the facts of this case, the failure on the part of the State Bar to send a reminder notice is not fatal to the State's case. Such a notice would serve no additional purpose where, as here, the lawyer

was aware of his suspension prior to the alleged acts of misconduct. Where the evidence clearly establishes that appellant has wholly failed to pay his bar dues, either timely or within any grace period, and appellant himself testifies that he knew his license was suspended at the time he held himself out as a attorney, we find sufficient evidence from which a rational trier of fact could find the appellant intentionally held himself out as a lawyer while not in good standing with the State Bar of Texas. Accordingly, appellant's third point of error is overruled.

Having overruled all points of error, we affirm appellant's conviction.

**Dissenting opinion by FEDERICO G. HINOJOSA, Jr., J., joined by CHAVEZ and YANEZ, JJ.**

FEDERICO G. HINOJOSA, Jr., Justice, dissenting.

I respectfully dissent because I believe language found in the State Bar Rules [1] reinstated appellant's good standing retroactive to the date of his suspension.

By his first point of error, appellant complains that the evidence is legally insufficient to support the jury's finding that he falsely held himself out as a lawyer. Relying on the State Bar Rules and *Hill v. State* [2] appellant contends that when he paid his State Bar dues, his status as a practicing attorney was reinstated retroactive to the date of his suspension. Therefore, appellant argues, under the proper interpretation of the State Bar Rules, his good standing was also reinstated retroactive to the date of his suspension.

Appellant was licensed to practice law in the State of Texas. On May 1, 1993, appellant was notified that his annual State Bar dues were due and payable on June 1, 1993, with a grace period until July 1, 1993 for late payment. On May 27, 1993, appellant was suspended from the active practice of law for

not complying with the State Bar rules requiring a certain number of hours of Minimum Continuing Legal Education ("MCLE"). Appellant did not pay his dues on June 1, 1993, nor did he pay his dues within the grace period. State Bar Rules require that if payment is not received by July 1, 1993, a reminder notice with a sixty-day extension shall be sent to the attorney. The State Bar did not send this notice because appellant was suspended from the active practice of law for failure to meet the MCLE requirements. On August 3, 1993, appellant satisfied his MCLE requirements and was reinstated to active status.

On September 1, 1993, the State Bar mailed appellant a letter notifying him that he was suspended from the active practice of law for nonpayment of dues.[3] Between October 23, 1993 and January 4, 1994, appellant sent the State Bar four checks. These checks were returned to appellant because they were written for an incorrect amount or because the checks were dishonored by appellant's bank. Although appellant finally paid his dues with a check dated January 4, 1994, the State Bar did not credit his account until February 16, 1994. From September 1, 1993 to February 16, 1994, appellant was suspended from the active practice of law for not paying his State Bar dues.

On December 13, 1993, appellant appeared in open court in Jackson County as the attorney of record for John Lemke, a defendant in seven felony criminal cases. For this conduct, appellant was indicted under section 38.122 of the Penal Code.

Section 38.122 provides, in relevant part, as follows:

**§ 38.122. Falsely Holding Oneself Out as a Lawyer**

(a) A person commits an offense if, with the intent to obtain an economic benefit for himself or herself, the person holds himself

---

1. Tex. Gov't Code Ann., tit. 2, subtit. G app. (Vernon 1988) (State Bar Rules art. III, § 7).

2. 393 S.W.2d 901, 904 (Tex.Crim.App.1965) (holding that counsel was not ineffective merely because he was suspended from the practice of law for nonpayment of State Bar dues as counsel continued to be licensed during the suspension and his status was reinstated to that which he

occupied prior to the delinquency). *See also Henson v. State,* 915 S.W.2d 186, 195 (Tex.App.—Corpus Christi 1996, no pet.).

3. According to the State Bar, 2,000 to 2,500 attorneys are suspended each year for nonpayment of dues.

or herself out as a lawyer, unless he or she *is currently* licensed to practice law in this state, another state, or a foreign country and *is* in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

TEX. PENAL CODE ANN. § 38.122(a) (Vernon 1994) (emphasis added). Tracking the indictment, the trial court's charge authorized the jury to find appellant guilty if it found:

> from the evidence beyond a reasonable doubt that on or about the 13th day of December, 1993, in Jackson County, Texas, the Defendant, WILLIAM SATTER-WHITE, JR., did intentionally or knowingly or recklessly with intent to obtain an economic benefit for himself, to-wit: attorney's fees, did then and there hold himself out as a lawyer to John Lemke, when the said WILLIAM SATTERWHITE, JR., was licensed to practice law in the State of Texas and that the said WILLIAM SAT-TERWHITE, JR., was not in good standing with the State Bar of Texas.

To violate section 38.122, appellant had to (1) intend to obtain an economic benefit and (2) falsely hold himself out to be a lawyer because he was either a) not currently licensed, or b) not in good standing with the State Bar. The indictment alleged that appellant was licensed to practice law in the State of Texas, and that issue was not contested. Appellant does not challenge the evidence supporting the jury's finding of his intent to obtain an economic benefit. However, appellant contends that because the State failed to prove he was not in good standing with the State Bar, it did not prove he falsely held himself out as a lawyer. Thus, the State Bar Rules must be examined to determine when a person is in good standing.

A member in good standing is defined as "a member of the State Bar who is not in default in payment of dues and who is not under suspension from practice." TEX. Gov't Code Ann., tit. 2, subtit. G app. (Vernon 1988) (STATE BAR RULES art. I). The State contends that because appellant was in default in payment of his dues and suspended from the active practice of law when he represented John Lemke, appellant was not

in good standing with the State Bar. If the definition for good standing was the only portion of the State Bar Rules related to default in payment of dues, I would agree with the State's argument. However, I find that the State Bar has other rules which are relevant and must be considered as well. These rules provide as follows:

## ARTICLE III—MEMBERSHIP

### Section 5.  Default in Payment of Fees or Assessments

If a member is in default of payment of membership fees or any assessment levied by the Court on the thirtieth day after the due date, the clerk shall forthwith notify the member of default. If the fees and assessments are not paid on or before sixty (60) days after the mailing of the notice of default, the defaulting member shall automatically be suspended from the practice of law. Any practice of law during such suspension shall constitute professional misconduct and subject the member to discipline.

TEX. Gov't CODE ANN., tit. 2, subtit. G app. (Vernon 1988) (STATE BAR RULES art. III, § 5).

### Section 7.  Return to Former Status

A.  When a member, who has been suspended for non payment of fees or assessments, removes such default by payment of fees or assessments then owing, plus an additional amount equivalent to one-half the delinquency, the suspension shall automatically be lifted and the member restored to former status. ***Return to former status shall be retroactive to inception of suspension,*** but shall not affect any proceeding for discipline of the member for professional misconduct.

TEX. Gov't CODE ANN., tit. 2, subtit. G app. (Vernon 1988) (STATE BAR RULES art. III, § 7) (emphasis added). Thus, the issue is whether the emphasized retroactivity clause affects a person's good standing for the purpose of section 38.122.

The original Rules Governing the State Bar of Texas were approved by the Texas Supreme Court on February 22, 1940. *See* TEX. Gov't CODE ANN., tit. 2, subtit. G app.

(Vernon 1988) (notes preceding article I). These rules did not specifically contain the retroactivity clause at issue here.[4] However, even without a specific retroactivity clause, the Texas Court of Criminal Appeals, in 1965, found that upon payment of delinquent dues, an attorney is restored to the status he occupied prior to becoming delinquent. *Hill v. State,* 393 S.W.2d 901, 904 (Tex.Crim.App. 1965). The Court also held that the attorney's delinquency was purged. *Id.* Moreover, any acts performed during the suspension were valid and revitalized. *Id.*

When the current State Bar Rules were adopted by the Supreme Court on March 14, 1983, the retroactivity language found in *Hill* was included. *See* STATE BAR RULE art. III, § 7. The rule states that former status is reinstated retroactively, but no language limits status to any particular aspect of the attorney's membership, such as his fiscal record. In fact, the only limitation placed on the retroactivity clause is the right retained by the State Bar to discipline a delinquent attorney for practicing while suspended. *Id.* Thus, when construing section 38.122 in conjunction with the State Bar Rules, I believe that we must also give deference to *Hill,* which neither section 38.122 nor the State Bar Rules have limited in any way.

The State argues that the language of section 38.122 obviates the effect of the retroactivity clause. According to the State, the Penal Code provision specifies that the attorney be in good standing at the time of the offense.

The Code Construction Act requires that "words and phrases shall be read in context and construed according to rules of grammar and common usage," unless they "have acquired a technical or particular meaning." TEX. GOV'T CODE ANN. § 311.011 (Vernon 1988). Although the word "currently" appears in section 38.122, I read the word, pursuant to the rules of grammar, to modify only the phrase regarding licensing. The Legislature deliberately chose to place "currently" after the first "is" in the clause which provides the only exception to the offense.[5] In addition, the Legislature repeated "is" in the phrase regarding good cause. I conclude that in drafting section 38.122 as it did, the Legislature intended to preserve the effect of the retroactivity clause.

What then is the effect of the retroactivity clause? When an attorney is suspended for nonpayment of dues, his right to practice law is forfeited, and he loses his good standing with the State Bar. *See* STATE BAR RULES art. I, art. III, § 5. The attorney continues to be licensed. *Hill,* 393 S.W.2d at 904. He remains an active member of the Bar because he is licensed. *See* TEX. GOV'T CODE ANN. § 81.052 (b) (Vernon 1988). Thus, the only former status that can be restored is the right to practice law. Dues are paid retroactive to the due date, and all acts performed by the attorney during the suspension are revitalized. *Hill,* 393 S.W.2d at 904. From the State Bar definition of good standing[6]— one not in default in payment of dues and not suspended from the practice of law—it follows that if the dues and acts performed during the suspension are affected retroactively, then the suspension must be lifted and the good standing must be reinstated retroactively.

I would hold that because appellant's payment of dues on February 16, 1994, retroactively returned him to his former status and good standing with the State Bar, the State could not present evidence that appellant was not in good standing with the State Bar. Because a rational trier of fact could not have found the essential element—that appellant was not in good standing with the State Bar—beyond a reasonable doubt, I would hold that the evidence is legally insufficient

---

4. *See* TEX.REV.CIV. STAT. ANN., tit. 14 app. (Vernon 1973)(STATE BAR RULES art. 4, §§ 5, 6)(appendix following art. 320a–1)(repealed 1983)(current version at TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon 1988)(STATE BAR RULES art. III, §§ 5, 7)).

5. [U]nless he or she *is currently* licensed to practice law in this state, another state, or foreign country and *is* in good standing with the State Bar of Texas.... TEX. PENAL CODE. ANN. § 38.122(a).

6. STATE BAR RULE art. I.

**622**

to support the jury's finding. I would sustain appellant's first point of error.

Therefore, I respectfully dissent.

YANEZ and CHAVEZ, JJ., join in this dissent.