PD-0761-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/29/2015 3:21:48 PM
Accepted 7/30/2015 3:43:16 PM
ABEL ACOSTA
CLERK

No. PD-0761-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

PATRICK MARCEL BROWN
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Petition for Discretionary Review from
Cause No. 14-13-00839-CR, affirming the decision in
Cause No. 1391739, in the 262nd Judicial District Court of Harris County, Texas

PETITION FOR DISCRETIONARY REVIEW

**Oral Argument Requested**

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

Nicolas Hughes
Assistant Public Defender
Harris County, Texas
TBN: 24059981
1201 Franklin St., 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax:     (713) 437-4316
nicolas.hughes@pdo.hctx.net

FILED IN
COURT OF CRIMINAL APPEALS

July 29, 2015

ABEL ACOSTA, CLERK

ATTORNEY FOR APPELLANT

**IDENTITY OF PARTIES AND ATTORNEYS**

APPELLANT:                                          PATRICK MARCEL BROWN

TRIAL PROSECUTOR:                          Hon. CATHERINE EVANS
                                                            Assistant District Attorney
                                                            Harris County, Texas
                                                            1201 Franklin Street, 6th Floor
                                                            Houston, Texas 77002

DEFENSE ATTORNEY AT TRIAL:          JEFF GRECO
                                                            Attorney at Law
                                                            701 North Post Oak Rd., Ste. 425
                                                            Houston, Texas 77024

                                                            JENNIFER GAUT
                                                            Attorney at Law
                                                            3730 Kirby Dr., Ste. 1120
                                                            Houston, TX 77098

PRESIDING JUDGE:                            HON. DENISE BRADLEY
                                                            Presiding Judge
                                                            262nd District Court
                                                            Harris County, Texas
                                                            1201 Franklin Street, 15th floor
                                                            Houston, Texas 77002

ATTORNEY FOR APPELLANT:              NICOLAS HUGHES
                                                            Assistant Public Defender
                                                            Harris County, Texas
                                                            1201 Franklin St., 13th Floor
                                                            Houston, Texas 77002

APPELLATE PROSECUTOR:                  MELISSA HERVEY
                                                            Assistant District Attorney
                                                            Harris County, Texas
                                                            1201 Franklin St., Suite 600
                                                            Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS .................................................................II

TABLE OF CONTENTS.....................................................................................III

INDEX OF AUTHORITIES ................................................................................. V

STATEMENT REGARDING ORAL ARGUMENT........................................................ 1

STATEMENT OF THE CASE ............................................................................... 1

GROUNDS PRESENTED FOR REVIEW................................................................... 1

REASONS FOR REVIEW ................................................................................... 2

ARGUMENT FOR REVIEW ................................................................................ 4

    I. Ground One: The Fourteenth Court of Appeals and other Courts of Appeals have erred by interpreting "holds himself or herself out as a lawyer" in a way that is broader than the phrase's plain meaning and which has significant constitutional ramifications ................................................................................. 4

        A. The plain meaning of "hold out" is narrower than the interpretations adopted by the Courts of Appeals .......................................................... 4

            1. The plain meaning of "hold out" requires explicit communication ........... 4

            2. Several Courts of Appeals have adopted an interpretation of "holds himself or herself out as a lawyer" which includes the unauthorized practice of law ................................................................................ 5

            3. The Fourteenth Court of Appeals interpreted of "holds himself or herself out as a lawyer" to encompass "taking certain actions and […] not correcting [the complaining witness's] mistaken belief" ................................ 7

        B. The impact of the interpretation of "holds himself or herself out as a lawyer" on Appellant's case ................................................................... 9

            1. The broader the definition of "holds himself or herself out as a lawyer," the more likely the statute is to be unconstitutional ....................................... 9

2. The broader the definition of "holds himself or herself out as a lawyer," the more likely a defendant is to require additional notice in order to prepare a defense.................................................................................. 10

3. If the definition of "holds himself or herself out as a lawyer" is narrower than the definition adopted by the Court of Appeals, Appellant's case must be reanalyzed....................................................................................... 11

II. Ground Two: The current interpretation of Section 38.122's good standing provision criminalizes the constitutionally protected, lawful activities of out-of-state and Texas lawyers in violation of the First Amendment................................... 12

A. The current interpretation of Section 38.122 fails to give effect to the conjunctive "and" which requires a lawyer to be in good standing with the Texas bar and out-of-state bar organizations......................................................... 12

B. Section 38.122's good standing requirement has severe constitutional implications.............................................................................................. 13

PRAYER ....................................................................................................... 15

CERTIFICATE OF SERVICE............................................................................. 16

CERTIFICATE OF COMPLIANCE ..................................................................... 16

APPENDIX.................................................................................................... 17

## INDEX OF AUTHORITIES

**Federal Cases**

*In re Primus*, 436 U.S. 412 (1978) ........................................................................ 10

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988) ................................ 10, 11

*United States v. Stevens*, 559 U.S. 460 (2010) .......................................................... 14

**State Cases**

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991) ..................................................... 4

*Brown v. State*, --- S.W.3d ----, No. 14-13-00839-CR (Tex. App.-Houston [14th Dist.] May 28, 2015) ................................................................................................passim

*Busby v. State*, Nos. 03-97-00757-CR, 03-97-00758-CR, 1999 WL 230498 (Tex. App.-Austin Apr. 22, 1999, pet. ref'd)............................................................................3, 5, 6, 8

*Celis v. State*, 416 S.W.3d 419 (Tex. Crim. App. 2013)..................................................... 13

*Daniels v. State*, 754 S.W.2d 214 (Tex. Crim. App. 1988) ................................................ 11

*Eris v. Phares*, 39 S.W.3d 708 (Tex. App.–Houston [1st Dist.] 2001, pet. denied) ......... 5

*Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013) .......................................................... 9

*Ex parte Manrique*, 40 S.W.3d 552 (Tex. App.-San Antonio 2001, no pet.) ................. 3, 5

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001) .................................................. 11

*Haecker v. State*, 571 S.W.2d 920 (Tex. Crim. App. 1978) ................................................ 11

*Kirkpatrick v. State*, No. 05–06–01275–CR, 2007 WL 1125617 (Tex. App.-Dallas Apr. 17, 2007, no pet.)........................................................................................................... 5

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) ....................................................... 9

*Satterwhite v. State*, 952 S.W.2d 613 (Tex. App.-Corpus Christi 1997), *aff'd by* 979 S.W.2d 626 (Tex. Crim. App. 1998)......................................................................3, 6, 8

*State v. Paiz*, 817 S.W.2d 84 (Tex. Crim. App. 1991) ....................................................... 14

*Tapps v. State*, 294 S.W.3d 175 (Tex. Crim. App. 2009)........................................................ 7

**Federal Constitutional Provisions**

U.S. CONST. Art. 1, Sec. 8............................................................................................. 14

U.S. CONST. Art. 6...................................................................................................... 14

**State Statutes**

TEX. PENAL CODE ANN. § 38.122 (West 2011).............................................................passim

TEX. PENAL CODE ANN. § 38.123 (West 2011)................................................................. 7

**State Rules**

TEX. DISCIPLINARY R. OF PROF'L CONDUCT R. 5.05..................................................2, 15

TEX. R. APP. PROC. R. 66.3 ....................................................................................... 3, 4

**Legislative History**

Senate Comm. on Jurisprudence, Bill Analysis, 73rd Leg., S.B. 1227 (April 7, 1993) ... 6

**Other Authorities**

Christine Davis, *Approaching Reform: The Future Of Multijurisdictional Practice In Today's Legal Profession*, 29 FLA. ST. U. L. REV. 1339 (2002)......................................................... 14

*Hold Out*, BLACK'S LAW DICTIONARY (10th ed. 2014)........................................................ 4

*Hold Out*, WEBSTER'S *THIRD NEW INTERNATIONAL DICTIONARY* (1961) ...................... 4

*Report of the Commission on Multijurisdictional Practice,* A.B.A., (August 2002) ..................... 2

**Pleadings and Motions**

*Appellant's Brief on the Merits on Discretionary Review*, *Celis v. State*, Nos. PD-1584-11, PD-1585-11, 2012 WL 934261 (Tex. Crim. App. Mar. 8, 2012) ....................................... 13

## STATEMENT REGARDING ORAL ARGUMENT

Appellant's case involves a complicated series of analyses, where this Court must first fix the meaning of the terms of Section 38.122,[1] then must determine the legal implications of those terms, and finally must determine whether any misinterpretation of those terms requires remand to the Fourteenth Court of Appeals. Oral argument can help this Court navigate this process and can help illustrate the ramifications of different interpretations of the language of Section 38.122.

## STATEMENT OF THE CASE

On March 27, 2013 in the 262nd District Court of Harris County, Texas, Appellant was indicted for falsely holding oneself out as a lawyer. (C.R. at 13). After a trial by jury, Appellant was convicted of falsely holding oneself out as a lawyer and the jury assessed punishment at 5 years in prison (C.R. at 970-971). On August 30, 2013, Appellant filed timely notice of appeal. On May 28, 2015, the Fourteenth Court of Appeals affirmed Appellant's conviction in a published opinion.

## GROUNDS PRESENTED FOR REVIEW

1. The Fourteenth Court of Appeals and other Courts of Appeals have erred by interpreting "holds himself or herself out as a lawyer" in a way that is broader than the phrase's plain meaning and which has significant constitutional ramifications

---

[1] This petition will use "Section 38.122" throughout as shorthand for Section 38.122 of the Texas Penal Code.

2. The current interpretation of Section 38.122's good standing provision criminalizes the constitutionally protected, lawful activities of out-of-state and Texas lawyers in violation of the First Amendment

## REASONS FOR REVIEW

In Texas, regulation of the practice of law relies almost entirely on judicial guidance. TEX. DISCIPLINARY R. OF PROF'L CONDUCT R. 5.05 cmt. 3. As noted by the comments to Disciplinary Rule 5.05,

> Neither statutory nor judicial definitions offer clear guidelines as to what constitutes the practice of law or the unauthorized practice of law. All too frequently, the definitions are so broad as to be meaningless and amount to little more than the statement that the practice of law is merely whatever lawyers do or are traditionally understood to do.

TEX. DISCIPLINARY R. OF PROF'L CONDUCT R. 5.05 cmt 2. Particularly problematic is the regulation of the modern practice of law, as regulation was drafted before the evolution globalization and the Information Age:

> Although client needs and legal practices have evolved, lawyer regulation has not yet responded effectively to that evolution. As the work of lawyers has become more varied, specialized and national in scope, it has become increasingly uncertain when a lawyer's work (other than as a trial lawyer in court) implicates the UPL law of a jurisdiction in which the lawyer is not licensed.

*Report of the Commission on Multijurisdictional Practice,* A.B.A., (August 2002).

Section 38.122, can fairly be criticized as being so broad that is meaningless without judicial guidance. Of the relatively few cases which even mention Section 38.122, even fewer analytically interpret the elements of the statute. *See* Appendix B,

TEX. R. APP. PROC. R. 66.3(b). No case has carefully analyzed what is meant by "hold out," and several cases have departed from the plain meaning of the phrase and have held that the unauthorized practice of law constitutes an act of holding oneself out as a lawyer.[2] TEX. R. APP. PROC. R. 66.3(d). The Fourteenth Court of Appeals interpreted Section 38.122 in an even broader fashion by concluding that "by taking certain actions and by not correcting [the complaining witness's] mistaken belief, appellant was holding himself out to be a lawyer as an element of Section 38.122." *Brown v. State*, --- S.W.3d ----, No. 14-13-00839-CR, \*10 (Tex. App.-Houston [14th Dist.] May 28, 2015); TEX. R. APP. PROC. R. 66.3(c). Additionally, the cases that interpret the meaning of the good standing requirement of Section 38.122 have not fully considered the effect of that provision on out-of-state lawyers[3] without any standing in Texas whose sole connection to Texas is practice of out-of-state law.[4] TEX. R. APP. PROC. R. 66.3(b). The interpretation of Section 38.122 is an important question of law, with a potentially unforeseen impact, that affects many who validly

---

[2] *See Brown v. State*, --- S.W.3d ----, No. 14-13-00839-CR, \*20 (Tex. App.-Houston [14th Dist.] May 28, 2015); *Busby v. State*, Nos. 03-97-00757-CR, 03-97-00758-CR, 1999 WL 230498, (Tex. App.-Austin Apr. 22, 1999, pet. ref'd); *Satterwhite v. State*, 952 S.W.2d 613, 616 (Tex. App.-Corpus Christi 1997), *aff'd by* 979 S.W.2d 626 (Tex. Crim. App. 1998).

[3] For consistency and brevity, the term "out-of-state lawyers" will be used in this section to refer to lawyers licensed in other states, countries, by the federal government, by a government agency, or other licensing authorities but who are not licensed to practice law in Texas courts.

[4] "Lawyers licensed in other states are also clearly excluded from prosecution so long as they are in good standing with the *State Bar of Texas and their own licensing bar or authority*." *Ex parte Manrique*, 40 S.W.3d 552, 554 (Tex. App.-San Antonio 2001, no pet.) (emphasis added).

3

practice law in the State of Texas, and should be reviewed by this Court. TEX. R. APP. PROC. R. 66.3(b, c, d).

## ARGUMENT

## I. Ground One: The Fourteenth Court of Appeals and other Courts of Appeals have erred by interpreting "holds himself or herself out as a lawyer" in a way that is broader than the phrase's plain meaning and which has significant constitutional ramifications

### A. The plain meaning of "hold out" is narrower than the interpretations adopted by the Courts of Appeals

#### 1. The plain meaning of "hold out" requires explicit communication

A statute must be interpreted according to the plain meaning of its text where possible:

> [I]f the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.
> […]
> There is, of course, a legitimate exception to this plain meaning rule: where application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the language literally.

*Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). The plain meaning of hold out as a lawyer is "represent[ing] (oneself […]) as having a certain legal status" as an attorney. *Hold Out*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Hold Out*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1078 (1961) ("to make out to be: represent"). "Holding out" cannot be assumed from a mere failure to correct

4

another's mistaken impression. *See Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.–Houston [1st Dist.] 2001, pet. denied) (Holding themselves out to public as married is synonymous to couple representing to others that couple is married). While no particular "magic words" or phraseology may be required, the plain meaning of Section 38.122 requires a person to actually and explicitly represent to another that he or she is a lawyer before the "holding out" element is satisfied. *Cf.* (8 R.R. at 34-35); *Brown*, No. 14-13-00839-CR at *10.

### 2. Several Courts of Appeals have adopted an interpretation of "holds himself or herself out as a lawyer" which includes the unauthorized practice of law

While several appellate courts have searched through dictionaries for the meaning of terms relevant to Section 38.122's interpretation, including "legal,"[5] "herself,"[6] and "lawyer,"[7] no Court of Appeals has thoroughly considered what is meant by "holds himself or herself out." In several cases, including Appellant's, convictions under Section 38.122 have been upheld where the gravamen of the offense was not a representation from the defendant to a complaining witness, but related to the unauthorized practice of law by the defendant on a complaining witness's behalf. This interpretation conflicts not only with the plain meaning of "hold out," but expands Section 38.122 well beyond the stated legislative desire to

---

[5] *Busby*, 1999 WL 230498 at 8.
[6] *Kirkpatrick v. State*, No. 05–06–01275–CR, 2007 WL 1125617, *1 (Tex. App.-Dallas Apr. 17, 2007, no pet.) (mem. op., not designated for publication).
[7] *Ex parte Manrique*, 40 S.W.3d at 555.

5

protect accident victims from the solicitation of personal injury business from unsavory, opportunistic individuals. Senate Comm. on Jurisprudence, Bill Analysis, 73rd Leg., S.B. 1227 (April 7, 1993)

In *Satterwhite*, the Thirteenth Court of Appeals held that Satterwhite violated Section 38.122 by engaging in the unauthorized practice of law:

> The evidence shows that on December 13, 1993, appellant represented John Lemke who entered pleas of guilty to indictments pending in a district court. The testimony of both Mr. and Mrs. Lemke establish that on the date of the pleas appellant was paid for his services. It is also beyond dispute that on December 13, 1993, appellant had been suspended for failure to pay his bar dues. The testimony from appellant and Lemke establish that appellant knew, on December 13, 1993, that his license to practice law had been suspended. We find this to be sufficient evidence, when viewed in the light most favorable to the jury's verdict, from which a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

*Satterwhite*, 952 S.W.2d at 616. In *Busby*, the Third Court of Appeals held that the mere provision of legal advice constituted a violation of Section 38.122:

> The evidence shows that while on community supervision and while not licensed to practice law, intending to receive an economic benefit for himself, appellant gave legal advice to litigants in personal injury cases. Thus, appellant falsely held himself out as a lawyer and violated the condition of his community supervision.

*Busby*, 1999 WL 230498 at *8.

What is important to note about both these cases is that the defendants' relationships with the complaining witnesses predated the date of offense and both defendants had been licensed lawyers when they had agreed to perform services for the complaining witnesses. There is no mention in *Busby* or in *Satterwhite* whether

6

either defendant continued to represent to the complaining witness that the defendant was still a lawyer after the defendant lost his bar license. In practice, this broad interpretation of Section 38.122 in *Busby* and *Satterwhite* transforms the law into a broader version of the criminal prohibition on the unauthorized practice of law and fails to give effect "to each word, phrase, clause, and sentence" of Section 38.122. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009); *See* TEX. PENAL CODE § 38.123.

**3. The Fourteenth Court of Appeals interpreted of "holds himself or herself out as a lawyer" to encompass "taking certain actions and […] not correcting [the complaining witness's] mistaken belief"**

Not having strong evidence that Appellant told the complaining witness that Appellant was a lawyer, the prosecution relied on the theory that Appellant violated Section 38.122 if the complaining witness thought Appellant was a lawyer and that Appellant acted "consistently" with that mistaken impression. (3 R.R. at 48-49, 53); (8 R.R. at 29-33, 35). The prosecution introduced this theory during its voir dire:

> **Prosecutor:** Okay. At the point where I'm sure glad that I found an attorney, is there a duty for that person to correct that assumption?
> **Prospective Juror:** Oh, yes.
> **Prosecutor:** Anybody think no? Anybody think you can sort of just let it sit there?
> **Prospective Juror:** Well, like the electrician, I do my own work at home. I don't hire anybody else. Does that mean I'm doing it wrong? I mean, if you don't ask me if I'm a lawyer and I'm just telling you I can legally help you, does that mean I'm in the wrong?
> **Prosecutor:** If you're practicing law, it does. If you're doing something that a lawyer is required to do, then, yes What we're here about is somebody representing himself, allowing themselves to be perceived as a lawyer, allowing that to happen. But to answer your question, or to sort

7

of get to it, do you believe that somebody then must say, I am a lawyer in order to be found guilty of this offense?

*Brown,* No. 14–13–00839–CR at *6. The prosecution additionally returned to this theory during its closing argument:

> **Prosecutor:** But at the point where you're called out on it, at the point where you're addressed and you know somebody thinks that you're something that you're not, every single one of you, every single person sitting out here said, of course, you have to correct that. Of course, you do.
>
> […]
>
> May not have been in the first conversation, but if there was ever any misunderstanding, ever at the very beginning, successively and repeatedly Defendant had opportunities to correct that and didn't. And by so doing he was aware of the consequences of his actions. He was aware of the circumstances that he had created, and he let it go.

(8 R.R. at 29, 35).

The Fourteenth Court of Appeals concluded "the voir dire exchange and closing argument did not involve a misstatement of the law." *Brown*, 14-13-00839-CR at *10. The Fourteenth Court of Appeals reasoned that Appellant "[held] himself or herself out as a lawyer" by "taking certain actions and by not correcting [the complaining witness's] mistaken belief." *Id.* Like the Courts of Appeals in *Busby* and in *Satterwhite*, the Fourteenth Court of Appeals did not require the Appellant to represent that he was a lawyer to the complaining witness. But unlike *Busby* and *Satterwhite*, there was no evidence that Appellant had clearly represented to the complaining witness that Appellant was a lawyer before the purported offense occurred. Furthermore, the State was not required to prove that Appellant was engaged in the practice of law. (3

8

R.R. at 58). The Fourteenth Court of Appeals's broad interpretation of "hold out" would be akin to determining that two people were married under common law where the two people lived together for several years, the two people were plainly in love and seen at many social settings together, and the two people did not correct others who incorrectly assumed they were married, but never actually represented to anyone that they were in more than a committed relationship.

**B. The impact of the interpretation of "holds himself or herself out as a lawyer" on Appellant's case**

**1. The broader the definition of "holds himself or herself out as a lawyer," the more likely the statute is to be unconstitutional**

At trial and appeal, Appellant challenged the constitutionality of Section 38.122, as overbroad, vague, an impermissible content-based restriction on free speech, and as generally violating the First Amendment. *See* Appellant's Brief at Issue One. However, before a court can determine whether a statute is overbroad, vague, applies to protected or commercial speech, or otherwise violates the First Amendment, the court must determine the meaning of that statute. *See, e.g., Long v. State*, 931 S.W.2d 285, 291–293 (Tex. Crim. App. 1996) (Applying a careful textual analysis of the harassment statute before conducting a constitutional analysis of that statute). Given that the First Amendment does not tolerate prohibitions painted with broad strokes, the broader the interpretation of Section 38.122, the greater the probability that the law is unconstitutional. *Ex parte Lo*, 424 S.W.3d 10, 19 (Tex. Crim. App. 2013) ("The State may regulate the content of constitutionally protected speech to promote a

9

'compelling interest,' […] if it chooses 'the least restrictive means' to further that interest").

Additionally, the Fourteenth Court of Appeals concluded without discussion that Section 38.122 prohibited only commercial speech. *Brown,* No. 14–13–00839–CR at *19. However, the broader the definition of "holds himself or herself out as a lawyer," the more likely the statute is to encompass speech that is "inextricably intertwined" with protected speech and which is accorded full constitutional protection. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795–796 (1988). The provision of legal advice, for example, is fully protected by the First Amendment. *See In re Primus*, 436 U.S. 412, 426 n. 17 (1978). If the Fourteenth Court of Appeals was incorrect about the commercial nature of the speech prohibited by Section 38.122, then the less rigid intermediate scrutiny test was incorrectly applied in Appellant's case and the case must be reanalyzed under the strict scrutiny test. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. at 795–796.

**2. The broader the definition of "holds himself or herself out as a lawyer," the more likely a defendant is to require additional notice in order to prepare a defense**

Complaining that merely tracking or citing Section 38.122 was insufficient to enable the defense team to prepare an adequate defense, Appellant challenged the sufficiency of the indictment and of the notice of extraneous offenses. Appellant's Brief at Issues 5 and 6. "[A]n indictment which tracks the language and terms of the statute is ordinarily sufficient." *Daniels v. State*, 754 S.W.2d 214, 218 (Tex. Crim. App.

10

1988). "However, this rule applies only where the information is framed under a statute which defines the act constituting the offense in a manner that will inform the accused of the nature of the charge." *Haecker v. State*, 571 S.W.2d 920, 921 (Tex. Crim. App. 1978). The broader the definition of "holds himself or herself out as a lawyer," the more likely the Fourteenth Court of Appeals erred when it determined that the indictment and the notice of extraneous offenses was sufficient to enable Appellant to prepare a defense.

### 3. If the definition of "holds himself or herself out as a lawyer" is narrower than the definition adopted by the Court of Appeals, Appellant's case must be reanalyzed

If the Fourteenth Court of Appeals employed the wrong legal interpretation of "holds himself or herself out as a lawyer," then the hypothetical jury charge used in the analysis of the sufficiency of the evidence was incorrect. Appellate Brief at Issue Two; *Gollihar v. State*, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001). Similarly, the State's voir dire and argument, the confusion resulting from any error during voir dire or argument, and the need of a instruction under Section 6.01(c) of the Texas Penal Code must be measured against the correct definition of "holds himself or herself out as a lawyer." Appellate Brief at Issue Three and Four.

**II. Ground Two: The current interpretation of Section 38.122's good standing provision criminalizes the constitutionally protected, lawful activities of out-of-state[8] and Texas lawyers in violation of the First Amendment**

**A. The current interpretation of Section 38.122 fails to give effect to the conjunctive "and" which requires a lawyer to be in good standing with the Texas bar and out-of-state[9] bar organizations**

The Fourteenth Court of Appeals's reasoning upholding the constitutionality of Section 38.122 relies on the current interpretation of "the requirements for being a lawyer set forth in the statute." *own*, No. 14-13-00839-CR at *11. In its analysis, the Fourteenth Court of Appeals concluded "communications [do not] violate Section 38.122 unless the individuals seek to obtain an economic benefit by holding himself or herself out as a lawyer when he or she is not licensed to practice law in Texas (or another jurisdiction) and is not in good standing." *Brown,* No. 14-13-00839-CR at *14. However, this paraphrased definition skips over crucial language from the statute: a lawyer must be in "good standing with the State Bar of Texas *and* the state bar or licensing authority of any and all other states and foreign countries where licensed." TEX. PENAL CODE § 38.122 (emphasis added).

The defendant in *Celis* argued that Section 38.122 should be interpreted to mean that a foreign lawyer should only need to prove authorization to practice in his/her respective jurisdiction. *Appellant's Brief on the Merits on Discretionary Review, Celis*

---

[8] For consistency and brevity, the term "out-of-state lawyers" will be used in this section to refer to lawyers licensed in other states, countries, by the federal government, by a government agency, or other licensing authorities but who are not licensed to practice law in Texas courts.

*v. State*, Nos. PD-1584-11, PD-1585-11, 2012 WL 934261, 29–32 (Tex. Crim. App. Mar. 8, 2012). However, this Court rejected this interpretation, requiring that any foreign lawyer be in good standing with the Texas bar:

> "Good standing with the State Bar of Texas" means:
> (1) Being a "Member in Good Standing" of the State Bar of Texas; or
> (2) Being certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners.
>
> A "Member in Good Standing" of the State Bar of Texas is someone who meets and complies with all applicable requirements of the Rules of the Supreme Court of Texas governing admission to the bar of Texas, and who is not in default of payment of dues and who is not under suspension from practice.
>
> A "Foreign Legal Consultant" is someone certified under the Rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas.

*Celis v. State*, 416 S.W.3d 419, 433–434 (Tex. Crim. App. 2013). By the same reasoning, any out-of-state lawyer must be in good standing with the Texas bar as well as all other out-of-state licensing authority with lawyer is associated with. TEX. PENAL CODE § 38.122. As the Fourteenth Court of Appeals applied an incorrect interpretation of the good standing provision when discounting Appellant's constitutional challenges, its analysis is inherently flawed.

**B. Section 38.122's good standing requirement has severe constitutional implications**

Out-of-state lawyers are often not in "good standing with the State Bar of Texas," in fact, many may have absolutely no standing with the State Bar of Texas. *See Celis*, 416 S.W.3d at 433–434. This is not by accident: the State of Texas is not permitted to

13

regulate the practice of law outside of Texas's boundaries and an out-of-state lawyer's standing in Texas is not relevant to her ability to practice before an out-of-state court. *See* U.S. CONST. Art. 1, Sec. 8; Art. 6; TEX. DISCIPLINARY R. OF PROF'L CONDUCT 5.05 cmt. 5. However, there is nothing about Section 38.122 that connects the offense to the practice of *Texas law* in *Texas courts*, and it is prosecutorial discretion which has protected out-of-state lawyers practicing out-of-state law in Texas thus far. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) (The First Amendment "does not leave us at the mercy of *noblesse oblige*" from the government). Furthermore, the Texas Penal Code is constructed in a way that confers criminal jurisdiction even in cases where a person – including an out-of-state-lawyer who has no connection to the State whatsoever. *State v. Paiz*, 817 S.W.2d 84, 85–86 (Tex. Crim. App. 1991).

A list of forseeable scenarios where an innocent out-of-state lawyer validly practicing out-of-state law may inadvertently violate Section 38.122 include:

> 1) during a phone call to a Texas resident regarding an out-of-state matter from the lawyer's home office,
> 2) during a phone call made to an out-of-state resident regarding an out-of-state matter while the lawyer happens to be vacationing in Texas,
> 3) while meeting a client in Texas to discuss an out-of-state matter
> 4) while answering a phone number or email where it is unclear where the potential client resides,
> 5) by advertising to perform out-of-state of federal services in a national bar journal that is distributed in Texas,
> 6) while speaking at a Texas CLE on national law, or even
> 7) by becoming a law professor at a Texas university.

*See* Christine Davis, *Approaching Reform: The Future Of Multijurisdictional Practice In Today's Legal Profession*, 29 FLA. ST. U. L. REV. 1339, 1339-1340 (2002) (Explaining how the

practice of law is no longer tethered to one's physical location). Section 38.122 may also have substantial collateral effects on the multijurisdictional practice of law, as frequently out-of-state lawyers will are consulted as experts on legal issues relevant to Texas practitioners, are in-house counsel for companies which span the nation or the globe, or are part of legal teams with global or national reach. *See* TEX. DISCIPLINARY R. OF PROF'L CONDUCT R. 5.05 cmts. 2, 5.  Even Texas bar members with inactive out-of-state bar memberships are subject to prosecution under Section 38.122, as the lawyer is not in "good standing with […] the state bar […] of any and all other states […] where licensed." Section 38.122's good standing clause is not narrowly tailored, is broader than necessary, and has a tremendous capacity to be misapplied and to chill constitutionally protected speech. If the Fourteenth Court of Appeals misinterpreted the good standing requirement, the case must be reanalyzed under the First Amendment using the correct interpretation of that requirement.

## PRAYER

Appellant prays that the Court determine the correct interpretation of Section 38.122 and reverse Appellant's case or remand Appellant's case for additional analysis.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

15

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender
Harris County Texas
1201 Franklin Street, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 386-9278 fax
TBA No. 24059981
nicolas.hughes@pdo.hctx.net

### CERTIFICATE OF SERVICE

I certify that a copy of this Petition for Discretionary Review has been served upon the Harris County District Attorney's Office — Appellate Section, on this the July 29, 2015 by electronic service.

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

### CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 3,894 words excluding portions not to be counted under Tex. R. App. P. 9.4(i)(1).

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

**APPENDIX**

A. Opinion, *Brown v. State*, --- S.W.3d ----, No. 14-13-00839-CR (Tex. App.-Houston [14th Dist.] May 28, 2015)

B. Summaries of cases interpreting Section 38.122

**Affirmed and Opinion filed May 28, 2015.**



In The

# Fourteenth Court of Appeals

NO. 14-13-00839-CR

**PATRICK MARCEL BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1382169**

## O P I N I O N

Appellant, Patrick Marcel Brown, appeals his conviction for falsely holding himself out as a lawyer. He was charged by indictment with violating Section 38.122. *See* Tex. Penal Code § 38.122 (West, Westlaw through 2013 3d C.S.). A jury found appellant guilty, and the trial court sentenced him to five years' confinement.

In six issues, appellant contends (1) Section 38.122 is unconstitutional, (2) the evidence is legally insufficient to support the conviction, (3) in voir dire examination, the State made misstatements of law concerning Section 38.122, (4) the trial court erred by denying a request for a jury instruction under Texas Penal Code Section 6.01(c), (5) the trial court erred by denying appellant's motion to quash the indictment, and (6) Brown was provided insufficient notice of extraneous instances of "falsely holding oneself out as a lawyer." We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant contends the evidence was legally insufficient to support his conviction.

When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id*. We review the sufficiency of the evidence measured by the elements of a hypothetically correct jury charge which sets forth the law as contained in the indictment. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The indictment alleged as follows:

2

> [Appellant] . . . on or about August 10, 2011, did then and there unlawfully, with the intent to obtain an economic benefit for himself from J.C. Romanda, held himself out as a lawyer to J.C. Romanda, and [appellant] was not currently licensed to practice law in this state, any other state, or a foreign country and was not in good standing with the State Bar of Texas and the state bar or licensing authority of any other state or foreign country.

Appellant stipulated that he was not in good standing with the State Bar of Texas or the state bar or licensing authority of any other state or foreign county.

> Section 38.122(a) of the Texas Penal Code provides:

> A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

*See* Tex. Penal Code Ann. § 38.122(a).

The statute does not include alternative "manner and means." *See id*. Therefore "[t]he manner or means by which a person holds himself out as a lawyer is not material and, therefore, would not be included in a hypothetically correct charge." *Celis v. State*, 354 S.W.3d 7, 20 (Tex. App.—Corpus Christi 2011), *aff'd* 416 S.W.3d 419 (Tex. Crim. App. 2013) (citing *Rodriguez v. State*, 336 S.W.3d 294, 299 (Tex. App.—San Antonio 2010, pet. ref'd)). Thus, the elements of a hypothetically correct jury charge critical to this appeal are whether appellant held himself out as a lawyer with intent to obtain an economic benefit.

The State's evidence demonstrated that Romanda had begun to negotiate his first house purchase. Issues with repairs and associated expenses arose, the option period on the sale expired, and Romanda no longer desired to purchase the house. Romanda testified he was concerned he would lose the money he had placed in escrow. Romanda felt he was being forced to purchase the house and that, if he

3

did not purchase at the original price, he might be sued. The seller's attorney contacted Romanda. This contact concerned Romanda because he began to consider there may be legal expenses associated with further handling of the house purchase. Romanda began looking for legal advice. A friend mentioned he knew a real estate attorney, and that friend provided appellant's information to Romanda.

Romanda testified he called appellant and explained to him that he was worried he might face a lawsuit if he did not execute the contract and that he wanted to be sure to avoid being sued. Appellant responded with an explanation of the negotiation process, reasons for contract termination, and what reasons and what forms could be used to cancel a contract. Romanda admitted he never asked appellant whether he was an attorney, and that after his initial discussions with appellant, Romanda believed he had hired an attorney.

Romanda testified he and appellant had significant contact, mostly over the phone or via email. In one of their first telephone calls, they discussed the payment of legal fees. Appellant told him not to worry about it and that, if Romanda backed out of the contract, appellant would represent Romanda as the agent for a new house and that he would be paid his legal fees out of the commission paid to appellant's wife, who would be the actual real estate agent on the possible purchase.

Romanda also testified about various websites for people working with their mortgages, trying to renegotiate or having other problems. One of those websites included contact information for "Patrick Brown, managing partner PCC Marcel & Associates, LLC." Romanda believed that was the law firm where appellant was employed because he found that information in the contact section of various legal websites.

4

Romanda testified that he appeared at the first closing with his real estate agent. Romanda requested appellant attend the closing as his lawyer to ensure things went smoothly. After this initial meeting, the attorney for the seller contacted Romanda asking for the contact information for his attorney. Romanda asked appellant what he should provide. Appellant responded that Romanda should use appellant's "PCC Marcel" contact information.

The State presented an email, sent by appellant to Romanda, stating:

> You can let Jeff [the mortgage broker helping Romanda] know I am good with our conversation and I understand about the privacy law. He was aware that I was your counsel so information provided to me is privaledge (sic), so it was fine for him to disclose information.

The State also proffered two additional email communications in which Romanda provided appellant's contact information to the seller's attorney, as Romanda's lawyer. Appellant is copied on those email messages. The record does not contain evidence that appellant explained he was not Romanda's lawyer. Finally, evidence was admitted of Romanda's payment to appellant for legal services—a check in the amount of $5,000, with the memo line noting "for attorney fees."

We hold the evidence was legally sufficient to support appellant's conviction. We overrule appellant's second issue.

## II. JURY VOIR DIRE

In his third issue, appellant contends that voir dire examination was improper because the State misstated the law in a hypothetical used when questioning venirepersons and that the error was compounded by the State in closing argument.

As a general rule, parties are allowed to use hypotheticals during voir dire. *See Pineda v. State*, 2 S.W.3d 1, 10 (Tex. App.—Houston [1st Dist.] 1999, pet.

5

ref'd).  We review for abuse of discretion the trial court's ruling on an objection to a hypothetical.  *See Thompson v. State*, 95 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Parker v. State*, 792 S.W.2d 795, 798 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd)).

During voir dire, appellant contended that the State was misstating the law. Relevant portions of the examination are as follows:

Prosecutor: Okay.  At the point where I'm sure glad that I found an attorney, is there a duty for that person to correct that assumption?

Prospective Juror: Oh, yes.

Prosecutor: Anybody think no?  Anybody think you can sort of just let it sit there?

Prospective Juror: Well, like the electrician, I do my own work at home.  I don't hire anybody else.  Does that mean I'm doing it wrong?  I mean, if you don't ask me if I'm a lawyer and I'm just telling you I can legally help you, does that mean I'm in the wrong?

Prosecutor: If you're practicing law, it does.  If you're doing something that a lawyer is required to do, then, yes. . . . .  What we're here about is somebody representing himself, allowing themselves to be perceived as a lawyer, allowing that to happen. But to answer your question, or to sort of get to it, do you believe that somebody then must say, I am a lawyer in order to be found guilty of this offense?

Prospective Juror: I would love to hear those words.

Prosecutor: I would love to hear those words, too . . . The question is, though . . . .  The State doesn't have to prove that the Defendant used specific words.  In that indictment nowhere does it say defendant handed out a business card that said lawyer; that a defendant said I am a lawyer.  There are no magic words.  Certainly if somebody used words, what

6

words they used, that's very important . . . .   Are your feelings such that you would require that I prove to you that somebody said, I am a lawyer before you could convict someone?

[Several venirepersons respond in the affirmative].

Prosecutor:     I have to prove those [elements in the indictment] to you beyond a reasonable doubt. One of the things that I don't have to prove is that specific words were used to create that impression.  I don't have to prove that the Defendant said, I'm a lawyer.  Though, I can understand people saying, you know what, I need to hear that.  Would you require that I prove that to you?

[Several venirepersons respond in the affirmative].

                . . .

Prospective Juror: I just have a question. . . . Yes, wouldn't that be a lie by omission, I mean.

Prosecutor:     If you let it sit there, falsely holding out as a lawyer is whatever you as the juror, as you're hearing it, what makes sense to you.  If you left that impression, if you had the opportunity to correct it, you know, obviously somebody would have to have a reason to think, oh, wait, you mean, right?  Who's been to the store and been asked a question like you're a salesperson, right?  So, you stand there, you're looking through the shirts and somebody says, excuse me - -

Defense counsel: Judge, I'm going to object.  Judge, may we approach?

The Court:      No.

Defense counsel: Well, it's a mistake of the law.   There's no definition of this lying by omission and going by that road.

The Court:      All right.  Overruled.

Prosecutor:     Okay. And so the point is you're standing there, you're just a patron of the store.  You're not necessarily trying to do anything, but at the point

7

> where somebody clearly believes your work there, what do you say?

Prospective Juror: I don't work here.

Prosecutor: So, the point is you have to have that opportunity you have to have that open door. But if you don't walk through that open door, if you say, well, here absolutely let me show you the way, right? Have you contributed to creating that impression?

Prospective Juror: Yes.

Appellant argues that in this voir dire questioning, the State created the impression that one could violate Section 38.122 by failing to act; that is, by suggesting a person should correct a mistaken impression, the State permitted the jury to convict appellant on an invalid theory. We disagree.

The trial court began voir dire by reading the indictment. The prosecutor then explained the charge in the indictment and read again from the indictment. The prosecutor confirmed that the State was not required to prove that appellant use specific words to create the impression that he is an attorney. As voir dire proceeded, the State inquired of the venirepersons:

Prosecutor: Are your feelings such that you would require that I prove to you that somebody said, I am a lawyer before you could convict someone?

Prospective Juror: If they do have to prove that you are a lawyer, yeah, I want proof.

The prosecutor responded that the State had to prove the elements of the offense beyond a reasonable doubt and that the State did not have to prove that "specific words" were used to create the impression that someone was holding themselves out as a lawyer, as set forth above. As the voir dire examination proceeded, the prosecutor then used a hypothetical involving a person who appeared to a patron shopping in a store to be a salesperson. In that context, the

prosecutor focused on what the patron clearly believed by observing the person's actions which created an impression; that is, creating the impression that the person was a lawyer.

When faced with those facts, the prosecutor remarked to the veniremen that "at the point someone clearly believes you work there," the person created the impression he is a salesperson if he "walks through that open door" and says "here absolutely let me show you the way."

We conclude from a review of the entire voir dire examination, trial and closing argument, that the jurors understood what was required of the offense. By taking affirmative action—in this case, responding to an email inquiry regarding the name of Romanda's counsel, attending closing, stating he understood "privaledge" communication, and negotiating a check referencing "attorney's fees"—appellant held himself out as a lawyer. Unless appellant corrected the incorrect impression, he continued to hold himself out as a lawyer to Romanda. This was the thrust of the voir dire examination. We hold the trial court did not abuse its discretion in overruling appellant's objection.

Further, a misstatement of law made during voir dire examination requires that a conviction be reversed only if the appellant demonstrates harm. *Thompson*, 95 S.W.3d at 542 (citing *Kelley v. State*, 845 S.W.2d 474, 479 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd)). Rule 44.2(b) requires a conviction may be reversed only if the appellant's substantial rights are affected for non-constitutional errors. *See* Tex. R. App. P. 44.2(b); *Easley v. State*, 424 S.W.3d 535, 539 (Tex. Crim. App. 2014). Substantial rights are affected when the error has the effect of substantially influencing the jury in reaching its verdict. *Johnson v State*, 43 S.W.3d 1, 3 (Tex. Crim. App. 2001) (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

9

In voir dire, the State clarified that by taking certain actions and by not correcting Romanda's mistaken belief, appellant was holding himself out to be a lawyer as an element of Section 38.122. The State carried this reasoning into its closing argument. Appellant also argues that the State affected his substantial rights when the State argued during closing argument: "Defendant had opportunities to correct that [creating a mistaken impression] and didn't." Also in closing argument, the State argued that appellant "let it [not correcting Romanda's belief] happen. With every single word, every single action, [appellant] acted consistently with that." The State focused on the manner in which appellant acted, including sending email messages, threatening to sue the real estate agent, and accepting a check for "attorney's fees." Further, appellant asserted during closing argument that a violation of Section 38.122 does not occur in the absence of appellant taking "affirmative steps" to allow Romanda to know appellant was a lawyer. Thus, appellant directed the jury's attention to the concept of action, as did the State.

We conclude the voir dire exchange and closing argument did not involve a misstatement of the law and appellant has not demonstrated harm from the line of questioning or argument. We overrule appellant's third issue.

### III. DENIAL OF REQUEST FOR 6.01(c) INSTRUCTION

In his fourth issue, appellant asserts the trial court erred by refusing to include in the jury charge a Section 6.01(c) instruction. The purpose of a jury charge is to inform the jury of the applicable law and guide it in applying the law to the facts. *See Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Section 6.01(c) of the Texas Penal Code provides that a person who fails to perform an act "does not commit an offense unless a law as defined by Section 1.07 provides that the omission is an offense or provides that he has a duty to

perform the act." Tex. Penal Code Ann. § 6.01(c) (West, Westlaw through 2013 3d C.S.).

As set forth above, appellant was charged with holding himself out to be a lawyer when he was not. Because he was not charged with a crime of omission, he is not entitled to the 6.01(c) instruction. *See Meyers v. State*, No. 05-03-01716-CR, 2005 WL 2362589, at *4 (Tex. App.—Dallas 2005, no pet.) (citing *Oler v. State*, 998 S.W.2d 363, 368 (Tex. App.—Dallas 1999, pet. ref'd, untimely filed)) (concluding Section 6.01(c) instruction not required because State did not charge defendant with conduct by failure to act). We overrule appellant's fourth issue.

## IV. DENIAL OF MOTION TO QUASH INDICTMENT

In his fifth issue, appellant contends the trial court erred by denying his motion to quash the indictment. We review a trial court's denial of a motion to quash an indictment *de novo* because the sufficiency of an indictment is a question of law. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1007, 128 S.Ct. 2056, 170 L.Ed 2d 798 (2008); *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Decisions involving questions of law do not involve the credibility or demeanor of witnesses; therefore the trial court is in no better position to resolve them. *Id.* Thus, we utilize *de novo* review.

An indictment must be specific enough to inform the defendant of the nature of the accusations against him in order that he may prepare a defense. *See Moff*, 154 S.W.3d at 601. In general, a charging instrument is sufficient where it tracks the statutory language and it provides notice of the offense. *Lawrence*, 240 S.W.3d at 916. "[A]n indictment must 'allege on its face the facts necessary (1) to show that the offense was committed, (2) to bar a subsequent prosecution for the same offense, and (3) to give the defendant notice of precisely what he is charged with.'" *State v. Edmond*, 933 S.W.2d 120, 131 (Tex. Crim. App. 1996); *Kfouri v. State*,

11

312 S.W.3d 89, 91 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Everything required to be proved should be stated in the indictment. *See* Tex. Crim. Proc. Code Ann. § 21.03 (West, Westlaw through 2013 C.S.). A defendant must receive notice of the "nature and cause" of the accusations against him. *See* U.S. CONST. amend. VI; TEX. CONST. art I, § 19. The specific language in the indictment is not the sole means by which the State fulfills the due process requirement. *See Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003). When a motion to quash is overruled, a defendant is not harmed unless he did not receive notice of the State's theory against which he must defend. *Id*.

Appellant filed a motion to quash the indictment asserting he was unable to prepare a defense because "Although each indictment tracks the language of § 38.122 Tex. Penal Code, the statute does not define 'economic benefit' or 'holds himself out as a lawyer' . . . [and] the Defendant has not been given sufficient notice of the alleged acts or omissions (the manner and means) by which he violated § 38.122 Tex. Penal Code." Appellant also argued that the indictment did not explain which communication between appellant and Romanda the State alleged was actionable.

The instrument alleged:

[Appellant] . . . on or about August 10, 2011, did then and there unlawfully, with the intent to obtain an economic benefit for himself from [Romanda], held himself out as a lawyer to [Romanda] . . . .

The record shows that appellant had notice of the specific instances in which the State claimed he held himself out as a lawyer to Romanda. At a pretrial hearing, the prosecutor advised the trial court that she had communicated with appellant's lawyer and advised him of the evidence the State anticipated presenting. Further, the State complied with a trial court order to provide a written summary of Romanda's testimony, which referred to the email communications

12

admitted at trial. Counsel for appellant was also provided with a copy of the email communications. Finally, the trial court granted appellant's motion for continuance, allowing appellant a week to review the documents which the State provided shortly before trial that it claimed supported a conviction for a violation of Section 38.122.

Finally, appellant contends the trial court erred by refusing to quash the indictment because the State did not provide adequate notice of the "manner and means" by which the State alleged appellant had committed an offense. "Subject to rare exceptions, an indictment tracking the language of the statute will satisfy constitutional and statutory requirements; the State need not allege facts that are merely evidentiary in nature." *Flores v. State*, 33 S.W.3d 907, 918 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd) (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)). An exception to this rule arises when the statute defines the manner or means through which one can commit an offense using different methods. *Id*. Where the statute defines manner and means, the indictment must provide notice of the statutory manner or means on which the State will seek to convict the defendant. *Id*. (citing *Edmond*, 933 S.W.2d at 128) (holding when a statute defines manner or means of committing an offense, indictment need not allege matters beyond the language of the statute).

Section 38.122 does not include the manner and means by which one could hold himself out as a lawyer. It follows that, because the statute does not include manner and means, it is not considered material, the State is not required to prove it, and it need not be included in the indictment. *See Edmond*, 933 S.W.2d at 128; *see also Mays*, 967 S.W.2d at 406 (concluding indictment which tracked manner and means in statute was sufficient). In sum, when the statute defines the manner and means of an offense, an indictment which tracks the statutory language is

sufficient. *Id*. Here, manner and means was not included in the statute; therefore, it was not required to be included in the indictment. The indictment alleged the elements of the offense and was sufficient. *See Flores,* 33 S.W.3d at 919 (concluding an information was defective because while the statute set forth manner and means, the information did not).

Appellant appears to argue here that the State did not sufficiently identify how he "held himself out as a lawyer," rendering the indictment defective. We hold that the words of the statute itself are not of "indeterminate or variable meaning" and, thus, tracking the statute was sufficient. *See Nix v. State*, 401 S.W.3d 656, 663 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (holding indictment sufficient where the crux of the offense was "not being a physician licensed to practice medicine in [the] state" because defendant could reasonably prepare his case without further description of how he handled the affairs of his medical clinic); *Cf. State v. Barbernell*, 257 S.W.3d 248, 254, 256 (Tex. Crim. App. 2008) (concluding that, for purposes of the offense of driving while intoxicated, the definition of "intoxicated" on which the State intended to rely need not be alleged to provide adequate notice because definitions are "purely evidentiary matters."). Definitions "set forth alternative means by which the State may *prove* intoxication, rather than alternate means of *committing* the offense" and, therefore, are evidentiary and need not be alleged in the indictment. *Barbernell*, 257 S.W.3d at 256 (citing *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003) (Emphasis in original).

Further, even if the charging instrument failed to provide notice, we must not reverse the conviction unless the error "affects the defendant's ability to prepare a defense." *Flores*, 33 S.W.3d at 919. We must review the entire record to determine whether a defendant was unable to prepare a defense. *Id*. A review of

the record fails to show harm. The record reflects that appellant had notice of the email messages between appellant and Romanda, which the State contended evidenced appellant's "holding himself out as a lawyer," as well as Romanda's check written to appellant for "attorneys' fees." Appellant acknowledged he received a copy of these documents, and the trial court granted appellant's motion for continuance to allow an additional one week to prepare to defend on these facts. Counsel for appellant also admitted in pretrial hearings that the State had disclosed the information it intended to offer at trial. We are unable to glean from this record how appellant was prejudiced or how his defense was detrimentally impacted by the language of the indictment.

We hold that the trial court did not abuse its discretion by denying appellant's motion to quash the indictment. We overrule appellant's fifth issue.

## V. EXTRANEOUS OFFENSES

In his sixth issue, appellant contends he was not provided sufficient notice of extraneous instances of "falsely holding oneself out as a lawyer." We review the trial court's admission of evidence under an abuse-of-discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). We uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Kacz v. State*, 287 S.W.3d 497, 501–02 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Appellant asserts the trial court erred by failing to require the State to produce notice of twenty-eight extraneous offenses and by admitting evidence of certain of these extraneous offenses. Appellant's complaints appear to be directed at the fact that the State provided only the names of twenty-eight people who were the alleged victims of a crime, the county in which an alleged crime or bad act occurred, and the date.

15

Appellant requested notice of extraneous offenses under Texas Rules of Evidence 404(b) and 609(f) and Texas Code of Criminal Procedure, Article 37.07, Section 3. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g) (West, Westlaw through 2013 3d C.S.); Tex. R. Evid. 404(b) and 609(f). Rule 404(b) provides that evidence of other crimes, wrongs or acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident" when the prosecutor provides "reasonable notice before trial that it intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." *See* Tex. R. Evid. 404(b). Rule 609(f) states generally that evidence of a conviction is not admissible if not provided to the proponent of the evidence upon timely written request. *See* Tex. R. Evid. 609(f). Finally, Article 37.07, Section 3(g) requires that, upon written request, if the State intends to introduce an extraneous crime or bad act that has not resulted in a final conviction, "notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g).

The record reflects that the State provided notice to appellant of its intention to use evidence of prior convictions and extraneous offenses, and it supplemented its notice. The notices included the information required by Article 37.07, Section 3(g). Additionally, appellant's counsel reviewed the information on which the State intended to rely at trial.

We hold the State did not violate the trial court's discovery order and did not thwart appellant's preparation for, or presentation of, its defense. *See Oprean*, 201 S.W.3d at 728. We overrule appellant's sixth issue.

## VI. CONSTITUTIONAL CHALLENGES

In his first issue, appellant complains that Section 38.122 is unconstitutional as facially vague and overbroad and "as applied." However, appellant did not urge "as applied" challenges until he filed his motion for new trial.[1] Appellant did not present the motion for new trial to the trial court and did not obtain a ruling on the motion. Presentment requires more than the mere filing of the motion. *See Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006) (holding "as applied" challenges preserved because motion for new trial was filed and the trial court ruled); *Carranza v. State*, 960 S.W.2d 76, 79–80 (Tex. Crim. App. 1998) (analyzing former appellate rule and holding review not preserved unless defendant brings matters to trial court's attention in a motion for new trial and trial court rules on the motion); *Longoria v. State*, 154 S.W.3d 747, 762 (Tex. App.—Houston [14th Dist. 2004, pet. ref'd) (holding where record fails to establish whether and how appellant presented motion for new trial to the trial court, it was not timely presented). Thus, appellant has waived his contention that the statute was overbroad and vague "as applied."

### A.    Standard of Review

We must presume the validity of a statute and further presume that the legislative body has acted reasonably and not in an arbitrary manner in enacting the statute. *See City of Brookside Village v. Comeau*, 633 S.W.2d 790 (Tex. 1982) *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982); *Ex parte Benavides*, 801 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, writ dism'd); *Memet v. State,* 642 S.W.2d 518, 522 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd) (quoting *Stansberry v. Holmes,* 613 F.2d 1285, 1289 (5th Cir.

---

[1]  Texas Rule of Appellate Procedure 21.6 provides:  "The defendant must present the motion for new trial to the trial court within 10 days of filing it . . . ." *See* Tex. R. App. P. 21.6.

1980), *cert. denied* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980), "[a]ny statute or ordinance which proscribes certain conduct must be sufficiently definite to 'give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' and to avoid the possibility of arbitrary and erratic arrests and convictions."). We will interpret the language of the statute considering its plain meaning, "unless the language is ambiguous or the plain meaning leads to an absurd result." *Duncantell v. State*, 230 S.W.3d 835, (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999)). When there are differing ways in which the statute can be construed, we apply the interpretation which sustains the validity of the statute. *See State v. Carmaco*, 203 S.W.3d 596, 599 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

We review *de novo* a facial attack upon a penal statute because it involves entirely a legal question. *Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)) (concluding legal questions subject to *de novo* review). The party challenging the statute bears the burden of establishing its unconstitutionality. *See DeWillis v. State*, 951 S.W.2d 212, 214 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (citing *Cotton v. State*, 686 S.W.2d 140, 145 (Tex. Crim. App. 1985)). "When an appellant challenges a statute as both unconstitutionally overbroad and vague, we address the overbreadth challenge first." *See Duncantell*, 230 S.W.3d at 843.

**B.      Facial Challenge to the Overbreadth of Section 38.122**

We will construe liberally appellant's complaints in his motion to quash and dismiss the indictment as urging a facial overbreadth challenge. "An overbreadth attack on a statute is recognized only in the context of a First Amendment challenge." *Goyzueta v. State*, 266 S.W.3d 126, 131 (Tex. App.—Fort Worth

18

2008, no pet.) (citing *U.S. v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

A statute or ordinance may be overbroad if in its reach it reaches a substantial amount of protected conduct. *See Duncantell*, 230 S.W.3d at 843 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982), and *Bynum v. State*, 762 S.W.2d 685, 687 (Tex. App.—Houston [14th Dist.] 1988, no pet.)). "A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications; therefore, we will not strike down a statute for overbreadth unless there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *See Duncantell*, 230 S.W.3d at 843; *State v. Holcombe*, 145 S.W.3d 246, 250 (Tex. App.—Fort Worth 2004), *aff'd*, 187 S.W.3d 496 (Tex. Crim. App.), *cert. denied*, 549 U.S. 824, 127 S.Ct. 176, 166 L.Ed.2d 41 (2006).

We must determine whether the statute reaches "a substantial amount of constitutionally protected conduct." *See United States v. Williams*, 553 U.S. 285, 292 (2008); *Celis*, 354 S.W.3d at 31 (citing *State v. Garcia*, 823 S.W.2d 793, 797 (Tex. App.—San Antonio 1992, pet. ref'd). However, where the regulation of the speech—in this case, commercial speech in its relation to the practice of law—is a subject of substantial and legitimate government interest, the statute is not invalid if it has an "incidental impact" on speech. *Celis*, 354 S.W.3d at 32 (citing *Ex parte Manrique*, 40 S.W.3d 552, 553 (Tex. App.—San Antonio 2001, no pet.))

"Commercial speech is generally afforded less constitutional protection than other forms of constitutionally guaranteed expression." *Pruett v. Harris County Bail Bond Bd.*, 249 S.W.3d 447, 456 (Tex. 2008). "For commercial speech to come within the provision of the First Amendment, 'it at least must concern lawful

19

activity and not be misleading.'" *Celis*, 354 S.W.3d at 35 (citing *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)).

Appellant asserts that, because the statute does not define "lawyer" or what it means to "hold oneself out as a lawyer," it reaches protected speech. Appellant argues the statute touches on the speech of non-lawyer professionals, non-practicing lawyers, or people with last names like "Barrister" who may be deprived of creative naming opportunities for businesses.

We reject these arguments. Section 38.122 includes several elements, each of which is capable of being readily understood: (1) a person must intend to obtain an economic benefit for himself by (2) holding himself out as a lawyer and (3) without holding a current license to practice law in Texas (or in another state or foreign country) and being in good standing. Appellant has failed to show how the statute touches on the speech of non-lawyer professionals because the statute is focused narrowly on those individuals who meet the elements of the statute. "The statute [38.122] affects only commercial speech in the context of employment as a lawyer," and it is not facially overbroad. *Manrique*, 40 S.W.3d at 554 (concluding holding oneself out as a lawyer by providing legal advice was commercial speech and did not render the statute invalid). Further, that the statute has no definition of the term and phrase about which appellant complains does not render it overbroad. *See Manrique*, 40 S.W.3d at 555 (holding in the context of a vagueness challenge, it is simple to conclude how a person holds himself out as a member of the legal profession).

Here, the statute seeks to regulate the practice of law—a commercial enterprise—therefore, it is not facially overboard. *See Celis*, 354 S.W.3d at 32 (citing *Manrique*, 40 S.W.3d at 554). The State of Texas has a compelling interest

in this regulatory framework; the benefit is to the citizens as a whole. *See id.* at 33 (citing *Sperry v. Florida*, 372 U.S. 379, 383, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963)) (recognizing that a state has a "substantial interest in regulating the practice of law within the State") (other citations omitted).

Appellant also urges that neither *Celis* nor *Manrique* had the benefit of *Ex parte Lo*, 424 S.W.3d 10, 24 (Tex. Crim. App. 2013) (holding the online solicitation statute was not narrowly drawn to "effectuate a compelling state interest" and there were more narrow means of achieving the State's interest in protecting minors). Appellant also argues the burden is on the State to justify "content-based regulation of speech." However, under *Lo,* the burden shifts only where the challenged statute restricts or punishes speech based on its content. *See* 424 S.W.3d at 15. *Lo* involved the regulation of pure speech—communications which, when applied, could restrict a person's thoughts, which the *Lo* court concluded were the beginnings of a person's speech, and thus, could not be restricted. *See* 424 S.W.3d at 25 (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 252–53, 122 S.Ct. 1389, 1403–04, 152 L.Ed.2d 403 (2002)). The focus in *Lo* was on speech based on conduct, not on commercial speech—holding oneself out as a lawyer—conduct to which section 38.122 applies.

We are unpersuaded that Section 38.122 restricts speech based on content. Rather, Section 38.122 regulates the commercial speech of individuals who hold themselves out as lawyers in Texas. *Celis*, 354 S.W.3d at 33. We conclude that Section 38.122 involves the regulation of commercial speech, in which an overbreadth challenge applies weakly, if at all. *See id*. at 32 (citing *Garcia*, 823 S.W.2d at 797); *Manrique*, 40 S.W.3d at 554. We reject appellant's overbreadth claim. *Id.*

21

## C. Facial Challenge to Vagueness of Section 38.122

Appellant next argues that Section 38.122 is unconstitutionally vague on its face. A statute is vague if persons of common intelligence are incapable of deciphering what conduct is prohibited. *See Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012). We consider whether the statute defines "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Lawrence*, 240 S.W.3d at 915.

Where the First Amendment is implicated, as appellant argues, a criminal law must (1) be sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what is prohibited, (2) establish determinate guidelines for law enforcement, and (3) be sufficiently definite to avoid chilling protected expression. *Ex parte Ellis*, 309 S.W.3d 71, 86 (Tex. Crim. App. 2010). If the vagueness challenge implicates First Amendment issues, the statute may be held facially invalid even though it may not be unconstitutional as applied. *See Celis*, 354 S.W.3d at 35 (citing *Long v. State*, 931 S.W.2d 285, 288 (Tex. Crim. App. 1996)).

If the First Amendment is not implicated, a facial vagueness challenge is sustained only if the statute is shown to be unconstitutionally vague in all of its applications. *See id.*; *see also Ex parte Ellis*, 309 S.W.3d at 80; *Lawrence*, 240 S.W.3d at 915. Thus, where the First Amendment is not involved, a facial challenge is difficult to sustain because the individual advancing the challenge must establish that no set of circumstances exists under which the statute is valid. *See Shaffer v. State*, 184 S.W.3d 353, 364 (Tex. App.—Fort Worth 2006, pet. ref'd).

Appellant asserts that Section 38.122 imposes "content-based restriction" on speech because it bans certain communication that "indicates a person is a lawyer, as opposed to communication that indicates that a person is a florist or a nuclear physicist." Appellant also urges that Section 38.122 "forbids even truthful speech." As we noted above, commercial speech is afforded less protection that other forms of expression which are guaranteed constitutional protection. *See Celis*, 354 S.W.3d at 35 (citing *Scott v. State*, 322 S.W.3d 662, 665 n.3 (Tex. Crim. App. 2010)).

Prohibited activity under Section 38.122 includes (1) holding oneself out as a lawyer, (2) with the intent to obtain an economic benefit, (3) unless the person meets the requirements for being a lawyer set forth in the statute. Appellant stipulated he did not meet the requirements for being a lawyer.[2] Tex. Penal Code § 38.122. This activity takes place "in the commercial context and necessarily involves expressions of a false and misleading nature which are not protected by the First Amendment." *Celis*, 354 S.W.3d at 35 (citing *Knight v. State*, 91 S.W.3d 418, 425 (Tex. App.—Waco 2002, no pet.)) (concluding "speech is not protected by the First Amendment when it is the very vehicle of the crime itself.").

To establish that the statute is unconstitutionally vague, appellant must demonstrate that Section 38.122 is unconstitutionally vague in all of its applications. *See Ex parte Ellis*, 309 S.W.3d at 80. Yet, the examples given by appellant would not fall within the conduct prohibited by the statute. Appellant suggests Section 38.122 restricts communications where an individual identifies as a lawyer or a florist. Appellant also contends the statute touches on statements

---

[2] Appellant's stipulation admitted he was not "currently licensed to practice law in this state, another state or a foreign country" and not "in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed."

made by a lawyer who "worked as a lawyer for 20 years" and is now applying for a non-legal job. However, none of those communications violate Section 38.122 unless the individuals seek to obtain an economic benefit by holding himself or herself out as a lawyer when he or she is not licensed to practice law in Texas (or another jurisdiction) and is not in good standing.

We conclude that the State of Texas has a compelling state interest in the regulation of lawyers. *See Celis*, 354 S.W.3d at 33 (citing *Sperry*, 372 U.S. 379, 383) (holding a state has a "substantial interest in regulating the practice of law within the state). We agree with *Celis* and hold that Section 38.122 does not "broadly prohibit" First Amendment speech. *Id*. Appellant has not met his burden to demonstrate how Section 38.122 is unconstitutionally vague in all of its applications. *See Ex parte Ellis*, 309 S.W.3d at 80. We overrule appellant's sixth issue.

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


/s/     John Donovan
        Justice


Panel consists of Justices Boyce, Jamison, and Donovan.
Publish—Tex. R. App. P. 47.2(b).

**I. Cases Interpreting "the person holds himself or herself out as a lawyer § 38.122. Falsely Holding Oneself Out as a Lawyer, TX PENAL § 38.122"**

   **A. Cases holding that a person who practiced law without a licensed "held himself or herself out as a lawyer"**

1.      The State's evidence shows that appellant gave legal advice after being granted community supervision. […] The evidence shows that while on community supervision and while not licensed to practice law, intending to receive an economic benefit for himself, appellant gave legal advice to litigants in personal injury cases. Thus, appellant falsely held himself out as a lawyer and violated the condition of his community supervision. The trial court did not abuse its discretion in finding that appellant violated a condition of his community supervision. Appellant's second point of error is overruled.

*Busby v. State*, Nos. 03-97-00757-CR, 03-97-00758-CR, 1999 WL 230498, (Tex. App.-

Austin Apr. 22, 1999, pet. ref'd).

2.      The evidence shows that on December 13, 1993, appellant represented John Lemke who entered pleas of guilty to indictments pending in a district court. The testimony of both Mr. and Mrs. Lemke establish that on the date of the pleas appellant was paid for his services. It is also beyond dispute that on December 13, 1993, appellant had been suspended for failure to pay his bar dues. The testimony from appellant and Lemke establish that appellant knew, on December 13, 1993, that his license to practice law had been suspended. We find this to be sufficient evidence, when viewed in the light most favorable to the jury's verdict, from which a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

*Satterwhite v. State*, 952 S.W.2d 613, 616 (Tex. App.-Corpus Christi 1997), *aff'd by* 979

S.W.2d 626 (Tex. Crim. App. 1998).

3.      Debellefeuille testified repeatedly that appellant identified himself to her and to anyone he met at the club as a lawyer. His business cards

identified himself as an attorney at law. When Debellefeuille told him about her accident, he told her that he would "handle the case."

Appellant presented evidence that, after he agreed to help her handle the case, Debellefeuille had signed a document making appellant her attorney in fact and acknowledging that appellant was not a licensed attorney. […]

Even assuming Debellefeuille did sign this document, the undisputed evidence shows that appellant had previously identified himself to her as a lawyer, including identifying himself as one on business cards, and said he would handle the case when she talked to him about the accident.

There was also evidence that appellant advertised in local magazines written in Persian. The State presented evidence that appellant identified himself as an "experienced attorney with record of work in all courts." […] Appellant presented testimony of his own translator that denied the advertisement identified appellant as an attorney. Even without this specific identification, however, the advertisement strongly suggests, as a whole, that appellant was identifying himself as a lawyer and soliciting work as a lawyer.

*Yazdchi v. State*, Nos. 01–10–01090–CR, 01–10–01091–CR, 2012 WL 5381211 ) (Tex. App.-Houston [1st Dist.] Nov. 1, 2012), *aff'd by* 428 S.W.3d 831 (Tex. Crim. App. 2014).

## b. Cases involving a forged signature from an actual lawyer

**1.** The record shows that appellant wrote a letter in which he claimed to be an attorney in an effort to delay his creditor's collection attempts. Appellant instructed his attorney to negotiate a plea agreement so that he would not have to go to prison. Appellant's attorney believed that appellant's actions met the elements of the offense, and he negotiated a plea pursuant to appellant's instructions. Appellant has not shown that he received ineffective assistance of counsel. The trial court did not abuse its discretion in overruling appellant's writ of habeas corpus.

*Gordon v. State*, Nos. 11-02-00182-CR, 11-02-00183-CR, 11-02-00184-CR, 11-02-00185-CR, 2003 WL 22838732 (Tex. App.-Eastland Nov. 26, 2003, pet. ref'd).

**2.**     The letter did not represent that appellant was Jon G. Burt, as alleged by the State in its indictment. Rather, appellant falsely claimed to have received a letter from Burt addressed to herself. Because she did not claim to be Burt, nor represent that she was an attorney, we cannot conclude the evidence shows appellant falsely held herself out as a lawyer. In making this conclusion, we are not suggesting that individuals may only violate the statute if they use their real name. Rather, our conclusion is that to falsely hold oneself out as a lawyer, a person must in some way claim or present herself as an attorney regardless of what name she uses.

*Kirkpatrick v. State*, No. 05–06–01275–CR, 2007 WL 1125617 (Tex. App.-Dallas Apr. 17, 2007, no pet.).

## II. Cases Interpreting the Good Standing Requirement

**1.**     A person that "has been disbarred by the State Bar of Texas […] is not in 'good standing' with the State Bar of Texas" and cannot "rely on a law license issued by another state as a means to circumvent the disbarment and continue to hold himself or herself out as lawyer in Texas." *Ellis v. State*, No. 14-99-00511-CR, 1999 WL 795669 (Tex. App.-Houston [14th Dist.] Oct. 7, 1999)

**2.**     Concluding that an instruction providing that "'Good standing with the State Bar of Texas' means:(1) Being a 'Member in Good Standing' of the State Bar of Texas; or(2) Being certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners" was a correct statement of the law. *Celis v. State*, 416 S.W.3d 419, 422, 434 (Tex. Crim. App. 2013).

**3.**     "Lawyers licensed in other states are also clearly excluded from prosecution so long as they are in good standing with the State Bar of Texas and their own licensing

bar or authority." *Ex parte Manrique*, 40 S.W.3d 552, 554 (Tex. App.-San Antonio 2001, no pet.).