

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00451-CR
### NO. 02-14-00452-CR

TIFFANY LYNN LEWIS                                          APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NOS. 1171316R, 1388094R

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Tiffany Lynn Lewis appeals from her conviction and sentence for falsely holding herself out as a lawyer and from the revocation of her community supervision and resulting sentence for misapplication of fiduciary property, valued between $20,000 and $100,000. *See* Act of May 29, 1993, 73rd Leg.,

---

[1]*See* Tex. R. App. P. 47.4.

R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3653 (amended 2015) (current version at Tex. Penal Code Ann. § 32.45(c)(5)); Tex. Penal Code Ann. § 38.122 (West 2011). In three points, Lewis argues that the evidence is insufficient to sustain her conviction for falsely holding herself out as a lawyer, that the trial court abused its discretion by admitting evidence about her disbarment during punishment, and that the trial court's stacking of her sentences constitutes cruel and unusual punishment. We will affirm.

## II. BACKGROUND

From December 1995 to April 2005, Lewis was licensed to practice law in Texas. During that time, she endorsed a check for $78,082.23 that was made payable to her client; the check represented funds awarded to her client during a probate proceeding. Lewis pleaded guilty to misapplication of fiduciary property, valued between $20,000 and $100,000; the trial court found her guilty, sentenced her to ten years' confinement and ordered her to pay $58,256.92 in restitution, suspended imposition of the sentence, and placed her on ten years' community supervision. Lewis was ultimately disbarred as a result of the facts underlying this conviction for misapplication of fiduciary property.

After Lewis was disbarred, she did not notify courts of her disbarment but instead accepted appointments and appeared in court on behalf of clients. One of Lewis's clients during the time when Lewis was disbarred was J.M.[2] J.M.

---

[2]To protect the identity of the victim, we use an alias.

2

needed to hire an attorney to find out whether she could obtain money from a lien she had on her daughter's house, which had been foreclosed on without notice to J.M. She contacted a landman who said that he would have an attorney call her. In response, J.M. received a call from Lewis. J.M. specifically asked Lewis on the telephone whether she was an attorney, and Lewis said that she was an attorney. J.M. asked to set up a meeting at Lewis's office so that she could give her the paperwork that she had copied from the courthouse deed records, and Lewis said that she had an associate with an office in Colleyville.

When J.M. met with Lewis, Lewis gave J.M. a contract and stated that the foreclosure had been done improperly, that Lewis would recover money from J.M.'s lien on the property, and that Lewis would pursue damages for J.M. and for her grandchildren.[3] Both J.M. and Lewis signed the contract with Lewis signing as "T. Lewis" above the typed out "Lynaire & Associates."[4] When Lewis said that she needed a $500 retainer fee, J.M. again asked whether Lewis was

---

[3]J.M.'s daughter, who had owned the home, had passed away, and J.M. believed that the house belonged to her youngest grandchild.

[4]The "Service Agreement" states, among other things, that J.M. retained Lynaire & Associates (the Firm) to assist her with a real estate/title search/foreclosure matter; that J.M. agreed to pay a nonrefundable retainer of $500 "for the Investigating the Title Issue"; that if the Firm assisted J.M. with filing suit, she agreed to pay a nonrefundable fee of $2,500; and that J.M. had the right in her sole discretion to terminate The Firm's representation of her prior to the conclusion of this matter. The copy of the contract in the record is the copy J.M. received, which was signed only by Lewis.

3

an attorney, and Lewis said yes. J.M. made her $500 check payable to "Tiffany Lewis, Attorney at Law." Lewis negotiated the check.

Sometime later, J.M. became dissatisfied with Lewis's representation because J.M. did not feel that any work was being done. J.M. ran an internet search on Lewis and discovered that she had been disbarred. J.M. called Lewis and terminated the contract, stating that she had been misled and that she wanted her money back. Lewis told J.M. that she had referred the case to in-house attorney Christopher Lewis, but J.M. testified at trial that she had never met with or spoken to him. J.M. never received a refund of the $500 retainer.

After hearing the above evidence, the jury found Lewis guilty of falsely holding herself out as an attorney. After hearing punishment-phase evidence of additional instances in which Lewis falsely held herself out as an attorney and lied about her identity in various transactions, the jury assessed Lewis's punishment at ten years' confinement and a $10,000 fine. The trial court sentenced Lewis in accordance with the jury's recommendation.

After the trial court dismissed the jury, the trial court held a hearing on the State's petition to revoke Lewis's community supervision in the prior misapplication-of-fiduciary-property case. The State's motion to revoke Lewis's community supervision in the misapplication-of-fiduciary-property case alleged five new offenses involving fraud or deception and three other violations of her community-supervision conditions, including that she was over $15,000 in arrears on her restitution payments. The trial court found all of the allegations to

4

be true, revoked Lewis's community supervision, sentenced her to ten years' confinement, and ordered her to pay $42,638.92 in restitution. The trial court also granted the "State's Request For Consecutive Or 'Stacked Sentence,'" ordering Lewis's ten-year sentence for falsely holding herself out as an attorney to run consecutively with her ten-year sentence for misapplication of fiduciary property. Lewis then perfected this appeal.

### III. SUFFICIENT EVIDENCE SUPPORTS LEWIS'S CONVICTION FOR FALSELY HOLDING HERSELF OUT AS A LAWYER

In her first point, Lewis argues that the evidence is factually[5] and legally insufficient to support her conviction for falsely holding herself out as a lawyer. Specifically, Lewis argues that the State failed to prove that she held herself out as a lawyer.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170

---

[5]Regarding Lewis's challenge to the factual sufficiency of the evidence, the court of criminal appeals has held that the *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Accordingly, we apply the *Jackson* standard of review to Lewis's sufficiency point and overrule the portion of her first point raising a factual-sufficiency challenge.

(Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

A person commits the offense of falsely holding herself out as a lawyer if, with intent to obtain an economic benefit for herself, the person holds herself out as a lawyer without currently being licensed to practice law in this state, another state, or a foreign country and without being in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed. Tex. Penal Code Ann. § 38.122.

During the trial, Lewis stipulated that when she met J.M., signed the contract with J.M., and cashed J.M.'s $500 check made payable to "Tiffany Lewis, Attorney at Law," she was not licensed to practice law in Texas or any other state. J.M.'s testimony showed that she believed Lewis was an attorney based on her words and her conduct. J.M. twice asked Lewis if she was an attorney, and Lewis responded affirmatively. Lewis also gave J.M. legal advice—representing that the house legally belonged to J.M.'s grandchild, that the foreclosure was done incorrectly, that J.M.'s grandchildren should have received notice of the foreclosure, and that Lewis would go to court to seek damages on behalf of J.M. and J.M.'s grandchildren. Lewis obtained an economic benefit when she negotiated J.M.'s check.

6

Despite the above evidence, Lewis argues that the State failed to prove that she held herself out as a lawyer because (1) J.M. was the only witness who testified to this element of the offense, (2) Lewis's initial meeting with J.M. was not recorded, and (3) no witness corroborated J.M.'s testimony. The record reflects that throughout cross-examination, J.M. never wavered in her testimony that Lewis twice told her that she was an attorney, and the defense presented no controverting evidence. Because Texas Penal Code section 38.122 has no requirement that a victim's testimony be corroborated and because the jury is the sole judge of the weight and credibility of the evidence, the jury was free to believe J.M.'s testimony even in the absence of corroboration. *See* Tex. Penal Code Ann. § 38.122; Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170; *cf. also Celis v. State*, 416 S.W.3d 419, 427–28 (Tex. Crim. App. 2013) ("[T]he [l]egislature has placed the burden of complying with conditions imposed for the protection of the public upon those who hold themselves out as lawyers for profit, rather than placing upon the public the burden of determining whether an individual is qualified and eligible to provide legal services.").

Viewing the evidence in the light most favorable to the verdict, the jury could rationally have concluded beyond a reasonable doubt that Lewis intended to obtain an economic benefit for herself by holding herself out as an attorney to J.M. while Lewis was not licensed to practice law. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789 (setting forth standard of review); *Rodriguez v. State*, 336

7

S.W.3d 294, 298–300 (Tex. App.—San Antonio 2010, pet. ref'd) (holding evidence sufficient to establish that appellant held herself out as an attorney because jury believed victim's testimony that appellant told him she was an attorney when they first met); *see also Brown v. State*, 468 S.W.3d 158, 163–64 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding evidence sufficient to support conviction based on victim's testimony, emails, and lack of any evidence that appellant had explained he was not victim's lawyer).  We overrule the remainder of Lewis's first point.

## IV.  NO ABUSE OF DISCRETION IN ADMITTING PUNISHMENT-PHASE EVIDENCE

In her third point, Lewis argues that the trial court abused its discretion during the punishment phase by admitting evidence of the details surrounding her disbarment.  Lewis objected to the admission of State's Exhibit 1A, which included documents from the State Bar Grievance Committee, and asserted that no appropriate witness with knowledge of the documents had been called to testify and that this evidence was not relevant.

### A.  Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 2966 (2011); *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).  As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm the trial court's

8

decision. *Martinez*, 327 S.W.3d at 736; *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

## B. Business-Records Exception

Lewis complains that State's Exhibit 1A—the disbarment documents from the State Bar of Texas—was admitted despite an absence of witnesses at trial to sponsor the disbarment documents.

Rule 803(6) of the Texas Rules of Evidence sets forth an exception to the hearsay rule. Tex. R. Evid. 803(6). Records of regularly-conducted activity, more commonly known as business records, may be admitted if the records were made at or near the time of the event, they were recorded by someone with knowledge, and it was common practice to keep such a record in the course of regularly-conducted business. *Id.* This information is established through the testimony of the custodian of the business record or other qualified witnesses or by a business-records affidavit that complies with rule 902(10). Tex. R. Evid. 803(6)(D). A party choosing to verify hearsay business records by affidavit must file the records with the court and notify the opposing party at least fourteen days prior to trial. Tex. R. Evid. 902(10).

Here, State's Exhibit 1A consists of nineteen pages of documents from the State Bar of Texas related to Lewis's disbarment.[6] A business-records affidavit

---

[6]The disbarment documents include the judgment of disbarment signed and entered on April 12, 2005; an agreed order of referral for rehabilitation signed on December 23, 2003; an agreed order of referral for rehabilitation signed on September 25, 2003; an agreed judgment of private reprimand signed

9

by Maureen Ray as custodian of the records of the State Bar of Texas was attached to State's Exhibit 1 and states that it pertains to nineteen pages of documents from the State Bar of Texas. The records and the affidavit were timely filed prior to trial. Although the business-records affidavit was not admitted into evidence as part of State's Exhibit 1A, the timely-filed, proper business-records affidavit covered the nineteen pages of documents from the State Bar of Texas that were included in State's Exhibit 1A. Consequently, the documents in State's Exhibit 1A are authenticated by a rule 902(10) business-records affidavit and required no extrinsic evidence of authenticity in order to be admitted.[7] Tex. R. Evid. 803(6)(D), 902(10); *Reyes v. State*, 48 S.W.3d 917, 922 (Tex. App.—Fort Worth 2001, no pet.) (holding medical records admissible under rules 803(6) and 902(10) based on substantially-compliant, business-records affidavit). We hold that the trial court did not abuse its discretion by admitting State's Exhibit 1A, and we overrule this portion of Lewis's third point.

## C. Relevancy

Lewis further argues that the documents in State's Exhibit 1A evidencing her disbarment were not relevant to her punishment because the jury had already found her guilty of falsely holding herself out as a lawyer.

---

on September 18, 2002; and agreed findings of fact and conclusions of law signed on September 18, 2002.

[7]Although Lewis raises no challenge to the business-records affidavit or to the length of time it was on file, the business-records affidavit substantially and procedurally complied with rule 902(10).

10

Texas Code of Criminal Procedure article 37.07, section 3(a) governs the type of evidence that is relevant during punishment and provides that

> evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2015). Evidence is "relevant to sentencing," within the meaning of the statute, if the evidence is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006).

Here, the disbarment documents were relevant to sentencing because they provided evidence of other bad acts involving professional misconduct committed by Lewis against clients other than J.M. and the punishment that she had received from the State Bar as a result of her professional misconduct. For instance, Lewis received a private reprimand for her failure to appear at a hearing and a trial on behalf of a client who was on trial for a traffic violation. Such evidence demonstrated that the punishment assessed by the State Bar against Lewis for various acts of professional misconduct from 2003 through 2005 did not deter Lewis from committing additional bad acts and crimes. The

trial court therefore could have reasonably concluded that such evidence would be helpful to the jury in determining an appropriate sentence for Lewis in this case. *See id.*

Because the disbarment evidence was relevant to Lewis's punishment, we hold that the trial court did not abuse its discretion by admitting State's Exhibit 1A. *See* Tex. Code Crim. Proc. Ann. art. 37.07, §3(a)(1); *Rodriguez*, 203 S.W.3d at 842; *Bitterman v. State*, No. 03-06-00386-CR, 2007 WL 2462018, at *3 (Tex. App.—Austin Aug. 28, 2007, pet. stricken) (mem. op., not designated for publication) (holding evidence of uncharged crimes relevant at sentencing); *cf. Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999) (holding that sentences assessed for prior convictions are relevant to the jury's determination of the appropriate sentence). We overrule the remainder of Lewis's third point.

### V. CONSECUTIVE SENTENCES DO NOT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT

In her second point, Lewis argues that the trial court's imposition of consecutive ten-year sentences constitutes cruel and unusual punishment and is prohibited by the Texas constitution and the United States Constitution.[8] We will not disturb a trial court's punishment decision "absent a showing of abuse of discretion and harm." *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *see* Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2015).

---

[8]Lewis preserved this issue by specifically raising it in her motion for new trial.

12

Generally, a sentence is not cruel, unusual, or excessive if it falls within the range of punishment authorized by statute. *Id.* Even if a sentence falls within the statutory range for that crime, however, it must be proportional to the crime. *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009 (1983). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S. Ct. 1133, 1138 (1980).

In addressing an Eighth Amendment disproportionality complaint, we first compare the gravity of the offense against the severity of the sentence. *Moore v. State*, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd). Only after a determination that the sentence is grossly disproportionate to the offense do we proceed to consider other factors. *Moore*, 54 S.W.3d at 541.

Comparing the gravity of the offenses against the severity of her consecutive sentences,[9] we conclude that, given the nature of the offenses and the punishment ranges,[10] as well as Lewis's past conduct while on probation—

---

[9]Although Lewis argues that her two consecutive ten-year sentences were grossly disproportionate to her crimes, "particularly in light of her substantial involvement in her daughter's life, trauma suffered during her life, and maximum sentences already imposed in both cases," our comparison of the gravity of the offenses against the severity of the punishment assessed does not include consideration of mitigating factors. *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 994–95, 111 S. Ct. 2680, 2701 (1991) (disregarding mitigating factors raised by appellant when conducting Eighth Amendment analysis in which appellant was sentenced to life in prison without the possibility of parole).

[10]Here, both of the individual sentences were within their respective statutory maximums. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01,

13

which included committing additional offenses involving fraud, dishonesty, and deception and failing to make numerous monthly restitution payments for the money she spent from her clients' probate-court settlement—Lewis's consecutive sentence of twenty years' confinement was not unconstitutionally disproportionate punishment for the offenses for which she was convicted.[11] *See Moore*, 54 S.W.3d at 542–43; *see also Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984) (holding cumulation of sentences did not constitute cruel and unusual punishment). *See generally Carney v. State*, 573 S.W.2d 24, 27 (Tex. Crim. App. 1978) ("There is no 'right' to a concurrent sentence . . . ."). Lewis has not shown that the trial court abused its discretion by ordering her sentences to run consecutively. We overrule Lewis's second point.

---

1993 Tex. Gen. Laws 3586, 3653 (amended 2015) (stating that misapplication of fiduciary property valued at the amount taken by Lewis is a third-degree felony); Tex. Penal Code Ann. § 38.122(b) (stating that falsely holding oneself out as a lawyer is a third-degree felony); Tex. Penal Code Ann. § 12.34 (West 2011) (providing that punishment range for a third-degree felony is imprisonment for a term of two to ten years and a fine not to exceed $10,000); *Barrow v. State*, 207 S.W.3d 377, 380–81 (Tex. Crim. App. 2006) ("The [l]egislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums.").

[11]Even if we determined a disproportionality did exist between the gravity of Lewis's offenses and the punishments assessed, there is no evidence in the record reflecting sentences imposed for similar offenses on criminals in Texas or other jurisdictions by which we could address the next two factors in an Eighth Amendment cruel-and-unusual-punishment analysis. *See Solem*, 463 U.S. at 292, 103 S. Ct. at 3011.

## VI. Conclusion

Having overruled Lewis's three points, we affirm the trial court's judgments.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 3, 2015